CAROL JUNE ROARK, *et al.*

*v.*

WALTER ALLAN DEMPSEY

(No. 13427)

Decided September 9, 1975

*Sanders, Austin & Gibson, William Sanders and Lane O. Austin* for appellants.

*Ben B. White, Jr.,* for appellee.

HADEN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Mercer County which overruled the Roarks' motion to set aside a judgment of the Intermediate Court of Mercer County entered upon a jury verdict and to award them a new trial.

The appellants assign two errors for this Court's consideration. First, they assail the trial court's refusal to permit a witness to testify in the case because of counsel's failure to submit the prospective witness' name and identification to the opposing party at least ten days before trial in accordance with an oral direction of the judge to counsel at pretrial proceedings. Secondly, the Roarks assert that the court erred in giving, over their objection, defendant's Instruction No. 1 defining duties of motorists traveling intersecting streets, when one such street is controlled by a stop sign, and when the other street is designated under the appropriate city ordinance as a "through" street.

The defendant Walter Allan Dempsey, appellee here, received a jury verdict and judgment in his favor in the trial court which acquitted him from the charge of actionable negligence allegedly arising from a motor vehicle collision with the plaintiff Carol June Roark.

The accident which gave rise to the appellants' claims occurred in Princeton, West Virginia, at the intersection of Harrison and Trent Streets. The appellant, Carol Roark, was driving a 1974 stationwagon north on Trent Street approaching its intersection with Harrison Street. The appellee, Walter Dempsey, was driving a 1972 Chevrolet Nova west on Harrison Street. There is a stop sign on Trent Street at its intersection with Harrison Street. The collision of the two vehicles occurred somewhere within the intersection. Mrs. Roark sustained personal injuries for which she and her husband, Charles Henry Roark, sought damages.

The jury heard conflicting versions of how the accident occurred from the parties and their witnesses.

Dempsey testified that, as he was approaching the intersection of Trent Street, he looked both ways, saw no vehicles and, therefore, was unaware of the Roark vehicle until just an instant before the impact. On the other hand, Mrs. Roark testified that she stopped at the stop sign on Trent, looked both ways and saw appellee's car some distance east on Harrison Street. She then proceeded through the intersection and was approximately half across its distance when her automobile was struck in the right side by appellee's vehicle. Mrs. Roark's mother was a passenger in the stationwagon and corroborated her daughter's testimony in regard to her stopping in observance of the traffic control.

An independent eyewitness, Sue Brock, sixteen years of age, was offered by the plaintiffs to testify that just prior to the accident she was sitting on a porch within one block of the accident site observing traffic, where she saw a yellow Chevrolet Vega approaching west on Harrison Street. She also observed a stationwagon, later determined to be driven by Mrs. Roark, halt at the stop sign at the Trent-Harrison Street intersection; and that she saw the stationwagon then proceed into the intersection where the accident occurred. This witness' testimony was excluded from the jury's hearing pursuant to a trial court ruling because plaintiffs' counsel had violated an order of the court in failing to notify seasonably opposing party's counsel of his intention to call this witness at trial. Counsel's excuse to the court, which is undenied by the appellee, is that plaintiffs did not discover the identity and whereabouts of the witness Brock, or become aware of the substance of her testimony, until the day of the trial. For this reason, according to appellants, this witness' identification was not made known to Dempsey's counsel ten days before trial as per the court's direction.

The appellants assert prejudice from the court's ruling and characterize Miss Brock as "the only independent eye-witness to this accident." On the other hand, the appellee says that this witness' testimony was merely

cumulative to the basic factual assertions presented in the plaintiffs' case and that it was, in part, unreliable because the witness identified the appellee's car as a "Vega" rather than a "Nova." Further, the appellee asserts that the trial court exercised justifiable discretion in refusing to hear a witness whose testimony and identity could have been discovered with due diligence at a much earlier date. The appellee further justifies the court's ruling on the basis that to receive such testimony at trial without prior notification would have surprised the defendant and prevented adequate ability to respond to his prejudice.

Moreover, our attention is directed to another circumstance which perhaps affected the trial court's deliberations in regard to its ruling on the motion to exclude this witness' testimony from the jury. On the morning of trial, but before the trial commenced, defense counsel advised the court of the possibility that defendant would have a witness by the name of Margie Guill, who, if produced, would testify as an eyewitness on matters relative to the occurrence of the accident. The Roarks' counsel at that time strenuously objected to the late production of this witness and asserted that his clients would be surprised and seriously prejudiced if the court were to allow the production of the witness Guill at the trial. For another reason, the proposed production of the witness Guill was never accomplished. Although she was located, it was learned that she had not witnessed the accident, and thus the defense abandoned its intention to use her at trial. Consequently, the court was never called upon to rule whether this witness would have been allowed to testify in the trial.

Nevertheless, the attempts to produce the witness Guill apparently triggered investigative efforts on the part of the appellants. Their investigative efforts were more successful and resulted in the identification and location of the prospective witness, Sue Brock. A few minutes before the noon recess, Sue Brock, accompanied by her father, presented themselves at the courthouse

for purposes of giving testimony. After the recess, plaintiffs' counsel made the motion which was overruled by the court and resulted in this matter being appealed.

The trial court's exclusionary rule regarding witnesses whose identities are not disclosed to opposing parties within ten days of trial, is based upon an informal rule of practice prevailing in Mercer County. Normally, civil actions there are pretried by the court before they are called to trial. One of the customary agreements of counsel made at the suggestion or direction of the court is that prospective witness lists shall be exchanged between the parties ten days before trial. Such a direction was given to the parties in this case at an informal pretrial conference held by the court several months before trial. For reasons which do not appear in the record of this case, the court did not enter a pretrial order pursuant to *Rule* 16, W. Va. R.C.P. This rule provides, *inter alia:*

"In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:

(1) The simplification of the issues;

(2) The necessity or desirability of amendments to the pleadings;

(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

(4) The limitation of the number of expert witnesses;

(5) The advisability of a preliminary reference of issue to a commissioner for findings to be used as evidence when the trial is to be by jury;

(6) *Such other matters as may aid in the disposition of the action.*" (Emphasis supplied.)

Obviously, this rule is suggestive to the court and to the attorneys that a pretrial conference may be of substantial aid in simplifying a prospective trial. In its first

sentence, the rule is addressed to the sound discretion of the court and a trial court may choose to use the rule or not as it sees fit, or as the complexity of a particular case may warrant.

On the other hand, *Rule* 16 concludes with language which forcefully indicates that once a pretrial conference has been held, an order reflecting the results of the conference shall be entered and its contents shall, as to matters covered within the order, govern the subsequent course of the trial. The second relevant paragraph provides as follows:

> "The court shall make an order which recites the action taken at the conference . . .; and after the order has been examined by counsel and entered, it controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

Appraising this language, this Court, speaking through Judge Browning, in the case of *Wheeler, Admr'x. v. Erwin,* 150 W. Va. 300, 145 S.E.2d 121 (1965), held the second paragraph of *Rule* 16 to be mandatory in regard to the entry of an order reflecting the proceedings had at pretrial conference. On this and other authority from Federal Rules decisions, the appellants assert that the trial court's failure to follow the mandatory provisions of *Rule* 16 in the entry of a pretrial order prevents the court from sanctioning a party for failure to follow directions of the court made at pretrial conference. One federal case, *Jones v. Union Auto. Indemnity Association of Bloomington, Illinois,* 287 F.2d 27 (10th Cir. 1961), is directly on point. There the court held the trial court to be in error, stating:

> "The court denied Jones the right to testify because she was not named on witness lists that apparently had been exchanged pursuant to pretrial proceedings. This ruling was wrong. If there were pre-trial proceedings, and the record does not disclose such proceedings, no pre-trial order was entered as required by *Rule* 16, F.R.Civ.P.

> Absent such an order the exchange of witness lists does not limit the number of witnesses or act as a bar to the testimony of a witness not named thereon. If pre-trial is to be used for such a purpose there must be a pre-trial order. . . ." *Id.* at 29.

In summary, the appellants say that, without the authority of a properly entered pretrial order, the trial court's action in excluding a proffered witness' testimony was improper and constituted reversible error.

Considering the facts and circumstances of this case, and particularly that appellant's counsel had objected to the prospective testimony of a "newly-found" witness of the appellee, the broader parameters of a trial court's discretion to control proceedings at trial are called into question. As we apprehend the issue before us, we are reviewing the court's inherent discretion to insure the parties a fair trial and prevent manifest injustice to either party in the prosecution or defense of his case. Consequently, we do not choose to adopt the rule of the *Jones* decision which appears to unduly restrict the discretion of a trial court.

Viewing the problem from this perspective, this Court has, in the recent past, determined a trial court to have abused its discretion and to have committed reversible error in not permitting a proffered witness who was an expert to testify before the jury. In the decision of *Duling v. Bluefield Sanitarium, Inc.,* 149 W. Va. 567, 142 S.E.2d 754 (1965), coincidentally arising from Mercer County, the issue of excluding a witness from testifying at trial who was not on a list of trial witnesses exchanged by counsel was discussed. In that case a non-resident physician was offered as a witness for the plaintiff. There, also, the plaintiff had failed to honor the court's ten-day witness exchange rule and had not notified counsel for the defendant of the plaintiff's intent to use this witness until a few days before the trial was to be heard. The physician's testimony, as in the present case, was made a part of the record out of the presence

of the jury. Recognizing that the physician witness in the wrongful death arising from an alleged hospital malpractice was very important to the plaintiff's case, that opposing counsel was advised of plaintiff's intent to use this witness before trial, and that trial proceedings were protracted, thereby obviating claims of "prejudicial surprise," the Court held at page 586 of the West Virginia Report:

> "Bearing in mind that the basic purpose of a trial in court is the ascertainment of truth with the aid of all testimony which may properly contribute to that purpose, and, believing that the defense could have been put to no serious disadvantage by having Dr. Byrne's testimony go to the jury, we are of the opinion that the trial court abused its discretion in excluding Dr. Byrne's testimony from consideration by the jury."

*Syllabus* point 6., prefixed to the Court's opinion summarizes as follows:

> "While it is proper for a trial court to direct counsel for the respective parties to exchange lists of witnesses ten days in advance of the commencement of the trial, such a requirement should not be so applied as to create undue hardship or unduly to impede the development of pertinent facts before the jury. The trial court, in the light of the situation subsequently arising, may commit reversible error in refusing to permit a witness to testify before the jury on the ground that opposing counsel were apprised less than ten days in advance of the trial that such person would be called as a witness."

We adopt the rationale of *Duling v. Bluefield Sanitarium, supra,* and hold that the trial court abused its discretion in excluding Sue Brock's testimony, to the prejudice of the appellants. As in *Duling,* the court's refusal "impede(d) the development of pertinent facts before the jury." Sue Brock was the only independent eyewitness to the accident and, for this reason, her testimony was

unique and not merely cumulative, as appellee contends. We recognize that the trial had already commenced and that counsel for plaintiffs had earlier argued strenuously against permitting a possible newly-found witness for the defendant to testify were factors which made the court's decision more difficult. The ascertainment of truth and the prevention of manifest injustice, however, should always be a court's first priority. A viable alternative was available to the court to meet this goal and yet maintain fairness to the objecting party. A continuance would have relieved the defendant's claim of surprise and inability to respond to the thrust of the proposed witness' proffered testimony. The judgment of the circuit court must be reversed on this point.

The second error assigned against the action of the trial court relates to the giving of Dempsey's Instruction No. 1, which provided as follows:

"The Court instructs the jury that it is the Law in the City of Princeton that:

"1.) The driver of a vehicle shall stop as required by Section 1 of Article 11 of this Traffic Law at the entrance to a through street and shall yield the right of way to other vehicles which have entered the intersection from said through streets or which are approaching so closely on said through street as to constitute an immediate hazard, but said driver having so yielded may proceed.

"2.) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through street and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.

"The Court further instructs the jury that if you believe from all the evidence in this case that the plaintiff, Carol June Roark, violated ei-

ther one or both of the above provisions of the Law of the City of Princeton then she is guilty of negligence and if this negligence contributed proximately, however slight, to the accident, then you must find your verdict for the Defendant, Walter Alan Dempsey."

The appellee offered the instruction in the language of the relevant city ordinance and asserts here that, as such, the instruction was a proper statement of the law and, as well, directly applicable to the facts of the case. The principal objection to the instruction is that the jury did not know what a through street was and could not thereby properly apply the principles of "right of way" to the facts adduced in the case. Webster's New International Dictionary of the English Language, unabridged (2d Ed. 1958), contains an easily understood and accepted definition of "through" street: "In some American cities, a street in which all vehicles have legal right of way over vehicles coming from intersecting streets." Likewise, the more modern and less definitive American Heritage Dictionary of the English Language (1969) in defining the word "through" illustrates by coupling it with the word "street" as follows: "Allowing continuous passage; unobstructed: *a through street.*" Both of these dictionary definitions reflect the commonly accepted meaning and understanding of the adjectival use of "through" when applied to a street or highway. We do not believe the jury could have been misled by being instructed in the language of the ordinance concerning the respective duties of motorists approaching through streets or alternatively approaching through streets controlled by a stop sign. As a general rule where the law governing a case is expressed in a statute or ordinance, the court not only may, but should, employ the language of the statute or ordinance in its charge to the jury. *See,* 75 Am. Jur. 2d *Trial* §609 (1974) and cases cited therein.

For the reasons herein stated, the order of the Circuit Court of Mercer County is reversed and the case is remanded with directions to award appellants a new trial.

*Reversed and remanded.*