629 S.E.2d 739

**Linda FARLEY and Clinton Farley, Plaintiffs Below, Appellants,**

v.

**Jeffrey SHOOK, D.P.M., Kirt Miller, D.P.M., Gabriel C. Fornari, M.D., Huntington Podiatry Associates, Inc., St. Mary's Hospital of Huntington, Inc., a corporation, and Does 1–10, Defendants Below, Appellees.**

No. 32770.

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 15, 2006.

Decided: March 16, 2006.

---

Frank M. Armada, Armada, Rogers & Thompson, Hurricane, for the Appellants, Linda Farley and Clinton Farley.

Tamela J. White, Anne O'Hare, Farrell, Farrell & Farrell, L.C., Huntington, for the Appellee, Gabriel C. Fornari, M.D.

Richard J. Bolen, Scott K. Sheets, Melissa Dodd Veltri, Erin E. Rich, Huddleston Bolen LLP, Huntington, for the Appellees, Jeffrey Shook, D.P.M., and Kirt Miller, D.P.M.

D.C. Offutt, Jr., Steven Burchett, Robert Sellards, Offutt, Fisher & Nord, Huntington, for the Appellee, St. Mary's Hospital of Huntington, Inc.

PER CURIAM.

Linda and Clinton Farley (hereinafter referred to as "the Farleys") appeal from an order entered September 27, 2004, by the Circuit Court of Cabell County. By that order, the circuit court granted summary judgment in favor of the remaining defendants, podiatrists Jeffrey Shook, D.P.M., and Kirt Miller, D.P.M. (hereinafter "Dr. Shook" and "Dr. Miller," respectively), and dismissed the case. Gabriel C. Fornari, M.D. (hereinafter "Dr. Fornari"), an emergency room physician, and St. Mary's Hospital of Huntington (hereinafter "St. Mary's") had already been dismissed by way of summary judgment

by order entered March 30, 2004.[1] On appeal, this Court is asked to review both summary judgment awards.[2] Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm the circuit court's award of summary judgment to Dr. Fornari and St. Mary's; we reverse the circuit court's award of summary judgment to Dr. Shook and Dr. Miller; and we remand the case to the circuit court for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The case before us follows the circuit court's final order that granted summary judgment to Doctors Shook and Miller. The factual background of this case is straightforward. On February 21, 2000, Mrs. Farley had outpatient surgery performed by Dr. Shook and assisted by Dr. Miller, both podiatrists, at the facility of St. Mary's. A benign soft tissue mass was excised on Mrs. Farley's right foot near her ankle. The surgery proceeded uneventfully, and Mrs. Farley was discharged that same day.

The next day, Mrs. Farley called Dr. Shook's office on several occasions with complaints of pain. She was instructed to come to the office; however, she was unable to find transportation. Later that night, the pain became unbearable, and Mrs. Farley called for an ambulance and was taken to the emergency department at St. Mary's. Upon arrival, she was seen by Dr. Fornari, an emergency room physician. Dr. Fornari contacted Dr. Shook's office to inform him that one of his recent surgical patients was in the emergency room. Dr. Fornari spoke with Dr. Miller, a resident working with Dr. Shook who had assisted during the subject surgery. Dr. Miller indicated to Dr. Fornari that there was no need to remove the surgical dressing because, during a previous conversation with Dr. Shook's office, Mrs. Farley had informed the office employees that she had already loosened her dressing. Mrs. Farley had no fever and had stable vital signs, as well as good color in her leg and toes; therefore, the plan was to medicate Mrs. Farley for pain, discharge her from the emergency room to home, and for her to be seen the next day in Dr. Shook's office.

Mrs. Farley went to Dr. Shook's office the next morning, February 23, 2000. It was noted that Mrs. Farley's ankle and foot were discolored and that blisters were present near the wound site. Mrs. Farley was sent to the hospital where it was confirmed that she was suffering from necrotizing fasciitis caused by bacteria, clostridium septicum. In lay terms, Mrs. Farley was suffering from gas gangrene, which can occur after surgery or trauma. Her condition was characterized by tissue death requiring removal of the dead tissue to prevent the infection from spreading and to save her life. This condition is

---

1. Huntington Podiatry Associates was also dismissed, without challenge, as reflected in the March 30, 2004, order. The defendants designated as DOES 1–10 represent possible defendants who were employed by the hospital. No further action was taken to identify such individuals.

2. Both summary judgment orders are ripe for our consideration. Pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure,

> when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

We have explained that "[a]n otherwise interlocutory order that is not expressly certified as final by using the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure remains interlocutory so long as the affected party does not seek an appeal." Syl. pt. 3, in part, *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 584 S.E.2d 176 (2003). Moreover, "[a]s long as a circuit court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." Syl. pt. 4, *id.* Thus, both orders awarding summary judgment are proper for our consideration.

rare and life-threatening and resulted in an emergent, above-the-knee amputation of her leg.

A lawsuit was filed on January 10, 2002, alleging that all of the defendants committed malpractice in the medical care provided to Mrs. Farley. An agreed order was entered on March 14, 2002, signed by all counsel, wherein it was recognized that expert testimony would be required on the issues of standard of care and causation. A scheduling order was entered on July 1, 2002, setting December 2, 2002, as the Farleys' expert disclosure deadline. When the Farleys failed to meet this deadline, Dr. Fornari and St. Mary's filed a motion to compel disclosure of the Farleys' expert witness. On December 9, 2002, the Farleys disclosed Dr. Albert Weihl, an emergency medicine doctor, as their expert witness.

The defendant doctors and St. Mary's disclosed expert witnesses on April 7, 2003, after asking for and receiving a stipulation from counsel for the Farleys as to an extension of time in which to disclose their experts. Thereafter, the Farleys' only expert, Dr. Weihl, was deposed. He testified as to deviations from the standard of care as it related to Dr. Fornari and St. Mary's; however, he was unable to testify regarding causation as to Dr. Fornari and St. Mary's. Moreover, because his area of expertise is emergency medicine, he did not testify as to any deviation of the standard of care as it would apply to podiatrists such as Dr. Shook and Dr. Miller. Thus, Dr. Fornari and St. Mary's filed motions for summary judgment based on the lack of any expert who could opine as to a causal link in the care provided to Mrs. Farley and her alleged injuries. The Farleys filed no responsive pleading or affidavits. The circuit court granted Dr. Fornari's and St. Mary's joint motion for summary judgment. In so doing, the circuit court found that "plaintiffs failed to produce evidence, to a reasonable degree of medical probability from expert or treating physicians, or a causal link between the breaches of the standard of care testified to by Dr. Weihl and the amputation."

Subsequently, Dr. Shook and Dr. Miller moved for summary judgment on the ground that the Farleys failed to put forth any requisite expert testimony as to any alleged deviations from the standard of care from the perspective of a doctor of podiatry. In response, the Farleys filed a motion to reconsider the court's previous granting of summary judgment in favor of Dr. Fornari and St. Mary's. The trial court denied the motion for reconsideration, and further granted summary judgment in favor of Dr. Shook and Dr. Miller. In so ruling, the circuit court found that "Dr. Weihl admitted at his deposition that he lacked the competency to testify as to any alleged deviations from the standard of care by either Dr. Shook or Dr. Miller, both of whom are Doctors of Podiatric Medicine[.]" Further, the trial court found that "[t]here are no genuine issues of material fact as to the alleged deviations from the standard of care by Dr. Shook and Dr. Miller as the [p]laintiffs have failed to establish the same via the testimony of a competent expert witness." The case was dismissed from the circuit court's docket. It is from the combination of the circuit court's decisions rendered on March 30, 2004, and September 27, 2004, that the Farleys now appeal.

## II.

### STANDARD OF REVIEW

The case before this Court on appeal follows the circuit court's ultimate order granting summary judgment in favor of Dr. Shook and Dr. Miller; however, it also involves a previous summary judgment awarded to Dr. Fornari and St. Mary's. In regard to the motions for summary judgment, we have stated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Thus, in undertaking our de novo review, we apply the same standard for granting summary judgment that is applied by the circuit court:

" 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of*

*New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter,* 192 W.Va. 189, 451 S.E.2d 755. Moreover,

[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter, id.* We are also mindful that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter, id.* Mindful of these applicable standards, we now consider the substantive issues herein raised.

## III.

### DISCUSSION

On appeal to this Court, the Farleys assign error to the circuit court's grant of summary judgment to first Dr. Fornari and St. Mary's, and the subsequent summary judgment granted to Dr. Shook and Dr. Miller. Both summary judgments followed the Farleys' inability to produce expert witnesses to testify against the defendants. The Farleys intimate that they should have had more time in which to identify experts. The defendants below/appellees herein contend that the summary judgment awards were proper. After briefly discussing the need for expert testimony, we will examine separately each summary judgment award: first, the award of summary judgment to Dr. Fornari and St. Mary's; then, the summary judgment award to Dr. Shook and Dr. Miller.

■ This case alleges medical malpractice. Therefore, it falls under the realm of the Medical Professional Liability Act, which states in pertinent part: "The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more

knowledgeable, competent expert witnesses if required by the court." W. Va.Code § 55–7B–7 (1986) (Repl.Vol. 2000). It has been explained further that " " '[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." Syl. Pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964).' Syl. pt. 1, *Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991)." Syl. pt. 1, *Neary v. Charleston Area Med. Ctr.,* 194 W.Va. 329, 460 S.E.2d 464 (1995) (per curiam). Thus, expert testimony is required for the Farleys to meet their burden of proving negligence and lack of skill on the part of the physician and the causal connection of that negligence to their injuries.

■ We pause briefly to note that some exceptions exist to the requirement of expert witness testimony. For example, in medical malpractice cases where lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's prima facie showing of negligence. *See Banfi v. American Hosp. for Rehabilitation,* 207 W.Va. 135, 529 S.E.2d 600 (2000). However, this exception does not apply to this matter.

In the present case pending before this Court, the Farleys alleged malpractice against Dr. Fornari, the emergency room doctor, and contended that he negligently failed to remove Mrs. Farley's surgical dressing when she presented to his department on February 22, 2000. The Farleys also averred that St. Mary's was negligent in that its nurses failed to repeat Mrs. Farley's vital signs during her emergency room visit on February 22, 2000. As to the claims against the podiatric defendants, the Farleys asserted that Dr. Shook and Dr. Miller negligently performed her cyst removal surgery, and that they mismanaged her care postoperatively, including failure to evaluate her while she was a patient in the emergency room. These medical issues and alleged breaches relate to complex matters of diagnosis and

treatment that are not within the understanding of lay jurors by resort to common knowledge and experience. Therefore, expert witness testimony was required to establish any breach of the standard of care and any causal connection to Mrs. Farley's injuries.

Significantly, the parties recognized that medical experts would be required. By order entered March 14, 2002, and signed by all counsel, the parties acknowledged that "expert medical testimony as to standard of care and causation will be necessary in this case." Moreover, we recognize that " 'a trial court is vested with discretion under W. Va. Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal.' Syl. Pt. 8, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997)." Syl. pt. 3, *Daniel v. Charleston Area Med. Ctr.*, 209 W.Va. 203, 544 S.E.2d 905 (2001). Thus, it is clear that the nature of the case required expert testimony, and the trial court did not abuse its discretion in requiring expert testimony to prove both breaches of the applicable standards of care and to prove causation.

Having set forth the requirements for maintaining a medical malpractice cause of action, we now are able to consider the summary judgment awarded to Dr. Fornari and St. Mary's. The circuit court awarded summary judgment to Dr. Fornari and St. Mary's on the basis that "plaintiffs failed to produce evidence, to a reasonable degree of medical probability from expert or treating physicians, or a causal link between the breaches of the standard of care testified to by Dr. Weihl and the amputation." Thus, our analysis must include an examination of the nature of the Farleys' expert disclosure. The Farleys identified one expert witness, Dr. Albert Weihl, who is a highly-credentialed emergency room physician. The Farleys anticipated that Dr. Weihl would provide testimony regarding Dr. Fornari's and St. Mary's deviations from the applicable standards of care, as well as testimony regarding a causal link to Mrs. Farley's injuries. During his deposition, Dr. Weihl testified regarding breaches in the standard of care provided to Mrs. Farley. He testified that Dr. Fornari failed to perform a complete examination, and failed to remove the surgical dressing and visualize the surgical wound. Dr. Weihl further stated that the emergency room nurses deviated from the standard of care in failing to retake Mrs. Farley's vital signs during her course in the emergency room, thereby implying their deviation to St. Mary's. However, Dr. Weihl was unable to link any of these alleged breaches in care to the ultimate outcome in Mrs. Farley's case. As to any questions regarding causation, Dr. Weihl stated that he would have to defer to another specialty, and he specifically mentioned an infectious disease expert would be the appropriate type of practitioner to answer those questions. Thus, Dr. Weihl was unable to provide any testimony regarding causation as it relates to Dr. Fornari or St. Mary's.

The Farleys bear the burden of proving negligence and lack of skill on the part of the physician proximately caused the injuries suffered. *Hicks v. Chevy*, 178 W.Va. 118, 121, 358 S.E.2d 202, 205 (1987); Syl. pt. 2, *Totten v. Adongay*, 175 W.Va. 634, 337 S.E.2d 2 (1985); Syl. pt. 1, *Hinkle v. Martin*, 163 W.Va. 482, 256 S.E.2d 768 (1979); Syl. pt. 4, *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967); Syl. pt. 1, *Schroeder v. Adkins*, 149 W.Va. 400, 141 S.E.2d 352 (1965); Syl. pt. 1, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964); Syl., *White v. Moore*, 134 W.Va. 806, 62 S.E.2d 122 (1950). *See* W. Va.Code § 55–7B–7 (1986) (Repl.Vol. 2000) ("The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff[.]"). Thus, because Dr. Weihl was the only expert designated to provide standard of care and causation testimony against the emergency room physician and the hospital, and because he was unable to provide the necessary causal links, the Farleys were unable to prove their case against these two appellees. The circuit court was correct in awarding summary judgment to Dr. Fornari and St. Mary's, and we accordingly affirm the circuit court's ruling.

■ Having determined that the first summary judgment award to Dr. Fornari and St. Mary's was appropriate, we now turn to a discussion of the propriety of the second summary judgment that was awarded to Dr. Shook and Dr. Miller. In awarding summary judgment to Dr. Shook and Dr. Miller, the circuit court found "Dr. Weihl admitted at his deposition that he lacked the competency to testify as to any alleged deviations from the standard of care by either Dr. Shook or Dr. Miller, both of whom are Doctors of Podiatric Medicine[.]" Further, the trial court found that "[t]here are no genuine issues of material fact as to the alleged deviations from the standard of care by Dr. Shook and Dr. Miller as the [p]laintiffs have failed to establish the same via the testimony of a competent expert witness."

The circuit court's ruling recognized that if an expert is going to be required by the Court or proffered by a party, the expert must be competent to testify. *See* W. Va. Code § 55–7B–7 ("The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court."). "Rule 702 of the *West Virginia Rules of Evidence* is the paramount authority for determining whether or not an expert is qualified to give an opinion." Syl. pt. 6, in part, *Mayhorn v. Logan Med. Found.*, 193 W.Va. 42, 454 S.E.2d 87 (1994). Rule 702 of the West Virginia Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

■ While a physician does not have to be board certified in a specialty to qualify to render an expert opinion, the physician must have some experience or knowledge on which to base his or her opinion. *See Fortney v. Al–Hajj*, 188 W.Va. 588, 425 S.E.2d 264 (1992) (stating that experience may qualify physician to render an expert opinion and that a physician does not necessarily need to be "board certified" in a medical field to work in that medical field for purposes of physician's qualification to testify as expert). In the present case, Dr. Weihl was the only expert designated by the Farleys. During his deposition, he was clear that he did not have the knowledge or skill to testify as to the applicable standard of care as it would apply to a physician in the field of podiatry. Consequently, he had no ability to opine whether Dr. Shook or Dr. Miller breached the standard of care. Based on the lack of any expert rendering an opinion as to whether the podiatric defendants breached the standard of care, the circuit court granted summary judgment. While we agree with the circuit court that Dr. Weihl was not a competent expert witness based on his lack of familiarity with the field of podiatry to testify against Dr. Shook and Dr. Miller, the particular facts of this case require scrutiny beyond Dr. Weihl's competence to testify about podiatry practices.

■ We are cognizant of the particular procedural history of this case, and are aware that the summary judgment awarded to Dr. Shook and Dr. Miller was a direct result of the Farleys' failure to identify appropriate expert witnesses. We are also aware that the Farleys filed a motion to extend their expert disclosure deadline, and their request was denied by the circuit court. The Farleys maintain that the circuit court's improper denial of their earlier motion for an extension of their expert disclosure deadline was the sole reason allowing summary judgment to be granted to Dr. Shook and Dr. Miller. Accordingly, to determine the appropriateness of the summary judgment awarded, we must look to the circuit court's denial of the Farleys' motion to enlarge the time in which they could identify expert witnesses.

■ The applicable standard of review in regards to the denial of the motion to extend the Farleys' expert disclosure time frame is an abuse of discretion standard. West Virginia Rule of Civil Procedure, Rule 16(e) provides:

*Pretrial orders.* After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This

order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

This proposition has been further recognized in our case law. *See McCoy v. CAMC, Inc.*, 210 W.Va. 324, 328, 557 S.E.2d 378, 382 (2001) (per curiam) (reiterating that Rule 16 vests in trial courts the discretion to modify scheduling orders); *State ex rel. Crafton v. Burnside*, 207 W.Va. 74, 528 S.E.2d 768 (2000) (reviewing the circuit court's decision not to amend the case management order under an abuse of discretion standard); *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 161, 451 S.E.2d 721, 727 (1994) (recognizing that it is within the trial court's discretion to refuse to allow a party to designate or substitute an expert witness after the expiration of the deadline set forth in the scheduling order); *Roark v. Dempsey*, 159 W.Va. 24, 217 S.E.2d 913 (1975) (discussing discretion of trial court in utilization of Rule 16 of the West Virginia Rules of Civil Procedure). Thus, we apply an abuse of discretion standard to the trial court's denial of the Farleys' motion to enlarge their expert disclosure deadline.

The Farleys sought additional time to find and disclose expert witnesses because they had not yet been able to depose the defendant doctors. Moreover, the Farleys suggested that they could not disclose expert witnesses until such time as they could depose the experts identified by Dr. Shook and Dr. Miller. Even more compelling than the timing of depositions and the rendering of expert opinions, we place great significance on an agreement that was reached between the parties. The record reveals that on two

separate occasions, the defendant doctors requested an extension of their expert disclosure deadline. Counsel for the Farleys agreed to the request, without hesitation, as a matter of professional courtesy. During the hearing on the motion, counsel for the Farleys conceded that, when the defendants sought enlargement of their expert disclosure deadlines, no reciprocal request was made on behalf of the Farleys. Because counsel for the Farleys had agreed to allow the defendant doctors an extension of time to identify their experts, he stated to the trial court that he anticipated no opposition to his own request for an extension of time. However, he was not treated with the same civility as he had demonstrated, and the defendant doctors did oppose the Farleys' motion for an extension of time. The trial court ruled that the Farleys were not entitled to an extension of time in which to identify experts.[3] Therefore, because Dr. Weihl was the only expert identified by the Farleys and he was deemed incompetent to testify against the podiatric physicians, the circuit court granted summary judgment to Dr. Shook and Dr. Miller.

■ We have previously recognized that "[u]pon a trial court's determination that an expert witness is required to prove standard of care or proximate cause in an action brought under the West Virginia Medical Professional Liability Act, West Virginia Code §§ 55–7B–1 to –11 (1986) (Repl.Vol. 2000), a reasonable period of time must be provided for retention of an expert witness." Syl. pt. 4, *Daniel*, 209 W.Va. 203, 544 S.E.2d 905. In the instant case, because of the impediments to the Farleys' ability to identify a podiatric expert, the trial court abused

---

**3.** We take this opportunity to point out that this case emphasizes the importance of complying with the West Virginia Rules of Civil Procedure when parties request alterations to scheduling orders, and further prescribes the necessity of reducing parties' agreements to writing. In this case, the defendant doctors and St. Mary's had requested extensions of their expert disclosure deadlines, which were memorialized in stipulations signed by all counsel. These written stipulations were filed with the circuit court on January 13, 2003, and again on March 14, 2003. When counsel for the Farleys realized the need for an extension, a similar practice should have

been employed instead of relying on a professional courtesy that never materialized. The particular facts of this case, including the obstacles the defendant doctors and St. Mary's placed before the Farleys, and the inequity in not allowing the Farleys an opportunity to develop an expert witness against Dr. Shook and Dr. Miller, allow this Court to remedy the injustice on the Farleys. Finally, to the extent that parties do agree to alter a scheduling order, even if the agreement is in writing, the parties must also be aware that such agreement ultimately requires approval by the circuit court.

its discretion in denying their motion to enlarge the time within which to identify such an expert. The situation against Dr. Shook and Dr. Miller is very different than the case against Dr. Fornari and St. Mary's. As against Dr. Fornari and St. Mary's, the Farleys were able to identify an expert; however, while competent to testify, that expert was not able to tie any breaches of the standard of care by Dr. Fornari or St. Mary's to the Farleys' injuries. Nonetheless, as against Dr. Shook and Dr. Miller, the Farleys were not afforded adequate time to identify experts in light of the impediments with which they were faced. Therefore, it follows that the summary judgment awarded to Dr. Shook and Dr. Miller, on the basis that no expert existed to testify against them, must be reversed.

## IV.

### CONCLUSION

For the foregoing reasons, we affirm the March 30, 2004, order awarding summary judgment to Dr. Fornari and St. Mary's. Further, we reverse the September 27, 2004, order awarding summary judgment to Dr. Shook and Dr. Miller, and remand this matter for proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded.