# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LEWIS A. WHALEY, D.O.,**
**Plaintiff Below, Petitioner**

**FILED**
**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-189**          (Cir. Ct. Kanawha Cnty. Case No. 21-C-288)

**HOYER, HOYER, & SMITH, PLLC,**
**CHRISTOPHER SMITH, and**
**DAVID HOYER,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner Lewis A. Whaley, D.O., appeals the February 8, 2024, order from the Circuit Court of Kanawha County, which denied his motion for summary judgment and granted the motion for summary judgment filed by Respondents Hoyer, Hoyer, & Smith, PLLC ("HHS"), Christopher Smith,[1] and David Hoyer ("Hoyer"). HHS and Hoyer filed a joint response.[2] Dr. Whaley filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This appeal involves a legal malpractice action filed by Dr. Whaley against HHS and Hoyer in the Circuit Court of Kanawha County on April 2, 2021, wherein Dr. Whaley asserted claims in connection with an arbitration proceeding filed in 2017 by Dr. Whaley and Dr. Michael B. Harmon, M.D. (collectively the "Doctors") against Charleston Radiation Therapy Consultants, Inc. ("CRTC"). For context, a brief history of the arbitration proceedings between the Doctors and CRTC prior to present case is as follows.

---

[1] Respondent Christopher Smith passed away on October 12, 2021. The order on appeal took judicial notice of Mr. Smith's passing, and only referred to HHS and Hoyer in its ruling.

[2] Dr. Whaley is represented by Joseph H. Spano, Jr., Esq. HHS and Hoyer are represented by Jeffrey M. Wakefield, Esq.

1

The Doctors were senior partners in CRTC, a radiation oncology practice. In 2014, several physicians at CRTC initiated an arbitration proceeding ("First Arbitration") against the Doctors, who retained HHS and Hoyer as their counsel for that proceeding. The First Arbitration ended in November of 2015 with a substantial arbitration award being entered against the Doctors. Dr. Whaley retired from CRTC in December of 2016. At the time of his retirement, Dr. Whaley also executed a Resolution dated December 14, 2016, which acknowledged Dr. Whaley's entitlement to his CRTC capital account and established his retirement benefits, which according to the Resolution could not be modified or changed.

In 2017, CRTC acted to involuntarily retire Dr. Harmon from the practice and claimed that the involuntary retirement reduced Dr. Harmon's retirement and compensation benefits. This created an issue as to the value of Dr. Harmon's capital account, as well as the value of the capital account held by Dr. Whaley. The Doctors retained HHS and Hoyer to pursue an arbitration action against CRTC ("Second Arbitration"). The Second Arbitration was filed on January 31, 2018, and contained various counts that mostly involved individual claims by Dr. Harmon. However, Count IV alleged nearly identical breach of contract claims regarding the Doctors' separate capital accounts.

The Second Arbitration was scheduled for hearing on January 28, 2019. Prior to the arbitration, HHS and Hoyer submitted a pretrial memorandum addressing all the arbitration claims, including their legal theories regarding the Doctors' capital accounts. During the arbitration, four days of testimony was heard by a three-arbitrator panel. The issue of the capital accounts was addressed by Hoyer in his opening statement. Dr. Harmon testified as to his separate claims, which included evidence concerning his breach of contract claim related to his capital account. The Doctors and CRTC offered competing expert testimony concerning the calculation of the capital accounts.

It is undisputed that HHS and Hoyer made the decision not to call Dr. Whaley as a witness during the Second Arbitration because the arbitration panel had advised the parties that it did not want to hear duplicative testimony. HHS and Hoyer believed that Dr. Whaley's testimony would be cumulative because he and Dr. Harmon's capital account claims were nearly identical. In Dr. Whaley's deposition, he acknowledged that he approved of this trial strategy. During closing arguments, Hoyer again addressed the Doctors' capital accounts. On March 20, 2019, HHS and Hoyer filed a post-trial brief on behalf of the Doctors. The brief was silent as to Dr. Whaley's capital account claim. A draft of this brief was provided to Dr. Whaley prior to its filing. He raised no concerns with HHS and Hoyer about its content.

A final order was entered regarding the Second Arbitration on April 2, 2019. The order specifically addressed the Doctors' capital accounts claim as follows:

> [The Doctors] claim their capital account payouts under Article 15.1 of the Operating Agreement (Exhibit J-2-C) should include an amount

2

corresponding to their proportionate share of the current value of the accounts receivable as of the date of their retirements. They claim their capital account payouts should also include a portion of the fair market value of the Women's and Children's Office Building, which is owned by a limited partnership in which CRTC owns a 5% interest. In [the Doctors'] post-hearing brief, Dr. Harmon states that he now accepts the calculation of the amount of his capital account shown on Joint Exhibit J-16.B. [The Doctors'] post-hearing brief is silent as to Dr. Whaley's claim. On the basis of the evidence presented at the hearing, the Panel determines both Dr. Harmon and Dr. Whaley were paid all amounts they were due in connection with their capital accounts, and it denies their claims with respect thereto.

The underlying legal malpractice action followed. In his complaint, Dr. Whaley alleged that HHS and Hoyer acted negligently when Dr. Whaley was not called to testify at the Second Arbitration hearing, and that his claim was abandoned because of the failure to include his capital account claim in the post-trial brief.[3] The circuit court entered its original scheduling order on February 10, 2022, which required Dr. Whaley to disclose all his expert witnesses by November 4, 2022. The scheduling order also required discovery to be completed by January 28, 2023, and trial was set for April 3, 2023. An amended scheduling order was entered on February 9, 2023, which set Dr. Whaley's expert witness disclosure deadline for May 16, 2023, and directed discovery to be completed by August 11, 2023. The trial of the case was moved to October 16, 2023. Dr. Whaley chose not to disclose any expert witness under either scheduling order.

On August 16, 2023, cross motions for summary judgment were filed. On August 22, 2023, the presiding judge, citing a conflict, recused himself from the case and the matter was reassigned to another judge who scheduled a status conference for October 13, 2023. Prior to the status conference, Dr. Whaley's counsel filed a memorandum in which he requested leave pursuant to Rule 15(a) of the West Virginia Rules of Civil Procedure to reopen discovery for the purposes of naming an expert witness. In both his memorandum and during the status conference hearing, Dr. Whaley's counsel argued that he desired to name an expert because his trial strategies vary depending on the presiding judge. Thus, he asserted that the changing of judges in this case required the disclosure of an expert as part of counsel's new trial strategy, and that there would be no prejudice to HHS and Hoyer if discovery was reopened for Dr. Whaley to name an expert witness. HHS and Hoyer objected, claiming they would be prejudiced by the reopening of discovery because they had already filed a summary judgment motion, in which they had set forth, among other things, their theory that Dr. Whaley's malpractice claim failed because of the absence of

_____

[3] The complaint also contained counts for breach of fiduciary duty, breach of contract, and punitive damages. These counts were also dismissed by the circuit court's order now on appeal. However, the circuit court's dismissal of the legal malpractice claim is the only count of the complaint challenged by Dr. Whaley on appeal.

expert testimony to establish the requisite standard of care and breach of the same. HHS and Hoyer also asserted that with the exception of setting new pre-trial and trial dates, a new scheduling order was not needed because all of the existing scheduling order's deadlines had passed, and the parties had filed dispositive motions.

The circuit court determined that all that was needed in the case was a hearing on the summary judgment motions, as well as setting new pre-trial hearing and trial dates. The circuit court found that prior to its assignment to the case, competing summary judgment motions had been filed, illustrating that both parties agreed there were no genuine issues of material fact and that the matter should be determined as a question of law. The motions for summary judgment were heard on January 11, 2024, and on February 8, 2024, the circuit court entered its order presently on appeal.

Regarding the legal malpractice claim, the circuit court found that Dr. Whaley was unable to establish a neglect of a reasonable duty on the part of HHS and Hoyer, defeating his claim for legal malpractice. Addressing Dr. Whaley's contention that his capital account claim was abandoned by HHS and Hoyer, the circuit court found that his abandonment theory was premised upon the fact that the post-trial brief was silent on the issue. However, the circuit court found that this claim was addressed by the Second Arbitration's final order, which stated: "On the basis of the evidence presented at the hearing, the Panel determines both Dr. Harmon and Dr. Whaley were paid all amounts they were due in connection with their capital accounts, and it denies their claims with respect thereto." Therefore, the capital account claim was resolved on the merits and the arbitration panel did not base its decision on the alleged abandonment of the claim. The circuit court further noted that the positions advanced by HHS and Hoyer in the pre-trial and post-trial briefs, as well as during opening and closing statements were merely arguments to the arbitration panel and were not evidence on the merits of the claim. However, the record established that there was evidence introduced in connection to the capital account claim.

Next, the circuit court rejected Dr. Whaley's contention that the failure of HHS and Hoyer to call him as a witness constituted legal malpractice. It determined that the Second Arbitration's final order clearly demonstrated that the Doctors' capital account claims were identical, and that the issue before the arbitration panel was the methodology to be employed in determining the amounts in the capital accounts. The circuit court noted that during the Second Arbitration hearing, HHS and Hoyer offered the testimony of Dr. Harmon and an expert witness as to their position on the appropriate methodology. Thus, the decision of HHS and Hoyer to not offer Dr. Whaley's cumulative testimony at trial on the same issue could not sustain the underlying claim for legal malpractice.

Likewise, it was determined that Dr. Whaley's legal malpractice claim could not survive summary judgment because he failed to produce expert testimony to establish breach of the applicable professional standard of care. The circuit court noted that under West Virginia law, expert testimony is required to establish a claim for professional

4

negligence when the level of professional skill is outside of the common knowledge or experience of a jury. In this case, the circuit court found that the decisions of HHS and Hoyer to not call Dr. Hoyer as a witness or specifically argue his capital account claim in the Doctors' post-trial brief, clearly involved matters of trial strategy which were beyond a jury's knowledge or experience. Therefore, it was determined that expert testimony was necessary to support Dr. Whaley's legal malpractice claim. The circuit court entered its summary judgment order on February 8, 2024, and this appeal followed.

On appeal, Dr. Whaley raises two assignments of error which require the application of different standards of review. Therefore, we will separately set forth the appropriate standard of review as we address each assignment of error.

First, we address Dr. Whaley's contention that the circuit court erred when it did not grant his request to reopen discovery deadlines under the amended scheduling order for the purpose of disclosing an expert witness.[4] We review a trial court's denial of a motion seeking relief from scheduling order deadlines for an abuse of discretion. *Baker v. Chemours Co. FC*, 244 W. Va. 553, 563, 855 S.E.2d 344, 354 (2021) (citations omitted) (stating that a trial court has broad discretion to control its docket and enforce the time limits of its scheduling orders under Rule 16(b) of the West Virginia Rules of Civil Procedure).

As to this issue, Dr. Whaley argues that the circuit court erred by not granting his request to reopen discovery and enlarge the deadline to disclose an expert witness based upon the appointment of a new judge while cross motions for summary judgment were pending. He contends that his counsel's decision to not disclose an expert witness under the deadlines set forth under the amended scheduling order was part of his trial strategy for litigating cases before the original judge. Under this strategy, counsel was confident that

---

[4] We note that Dr. Whaley's reliance upon Rule 15(a) of the West Virginia Rules of Civil Procedure on this issue is misplaced. In general, Rule 15 sets forth the procedures for a party to file amended and supplemental pleadings; however, that is not the issue in this case. Instead, Dr. Whaley sought to reopen discovery deadlines which had already closed under the February 9, 2023, amended scheduling order. In other words, Dr. Whaley was seeking to extend the deadline for expert witness disclosure. Therefore, the proper mechanism for such relief is a motion under Rule 16 of the West Virginia Rules of Civil Procedure, which deals with the circuit court's entry of scheduling orders and case management. W. Va. R. Civ. P. 16(b)(5) ("A schedule shall not be modified except by leave of the judge"). However, because we review rulings under both Rules for an abuse of discretion, we will address this argument on appeal. *See, e.g.*, *Bowyer v. Wyckoff*, 238 W. Va. 446, 453, 796 S.E.2d 233, 240 (2017) (citations omitted) (noting that it is within a trial court's discretion to grant or deny a motion to amend under Rule 15(a) of the West Virginia Rules of Civil Procedure).

Dr. Whaley's claims would prevail at summary judgment without an expert witness; however, when the new judge was assigned the case, the decision was made to hire an expert, fearing that HHS and Hoyer would prevail on summary judgment. In sum, Dr. Whaley's counsel was only prepared to argue summary judgment without an expert before the former judge. Therefore, it is argued that Dr. Whaley's case has been prejudiced by the reassignment of the case and he is entitled to the reopening of discovery. We find no merit in this argument.

A trial court's discretion under Rule 16 also extends to expert witness disclosures. *Farley v. Shook*, 218 W. Va. 680, 688, 629 S.E.2d 739, 747 (2006) (per curiam) (applying an abuse of discretion standard to trial court's denial of motion to enlarge deadline for expert witness disclosure under Rule 16(b)); *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W. Va. 155, 161, 451 S.E.2d 721, 727 (1994) (finding that trial court's refusal to allow a party to designate or substitute an expert witness after the expiration of scheduling order's deadline was within its discretion). In this case, Dr. Whaley offers no authority to establish that a change in trial strategy or the recusal of the presiding judge entitles a party to a new scheduling order or expanded scheduling order deadlines, especially for deadlines that have expired. Instead, the record shows that the circuit court made a discretionary ruling that based upon its review of the posture of the case, summary judgment motions were pending, the matter was mature for ruling, and further discovery or a new scheduling order was unnecessary. We defer to the circuit court's discretion and decline to disturb its ruling on this issue.

In his final assignment of error, Dr. Whaley challenges the circuit court's entry of summary judgment. In West Virginia, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

On this issue, Dr. Whaley argues that the circuit court erred when it based its summary judgment ruling on its finding that the common knowledge exception did not

apply, and that the nature of his legal malpractice claim required the opinion of an expert witness.[5] Upon review, we find no error in the circuit court's entry of summary judgment.

In its decision, the circuit court relied upon the general rule set forth in *Totten v. Adongay*, which states: "'It is the general rule that want of professional skill can be proved only by expert witnesses. However, cases may arise where there is such want of skill as to dispense with expert testimony.' Syl. pt. 2, *Howell v. Biggart*, 108 W. Va. 560, 152 S.E. 323 (1930)." Syl. Pt. 3, *Totten v. Adongay*, 175 W. Va. 634, 337 S.E.2d 2 (1985). It was further noted that expert testimony is not required in professional negligence actions when matters fall within the common knowledge exception identified by *Totten*, which establishes:

> In . . . malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters . . . within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's *prima facie* showing of negligence.

*Id.* at 634, 337 S.E.2d at 3, syl. pt. 4.

On this point, Dr. Whaley contends that when HHS and Hoyer abandoned his capital account claim and failed to call him as a witness during the Second Arbitration, they committed a breach of duty that was "so gross and obvious" that it was within the common knowledge and experience of lay jurors, meeting the exception for expert testimony. To support his position, Dr. Whaley maintains that our law is underdeveloped with respect to the common knowledge exception and cites cursory excerpts from two California District Court of Appeal decisions to support his contention that expert testimony is not required in all legal malpractice cases. We are unpersuaded by those decisions.

Instead, we turn to a recent decision by our Supreme Court of Appeals which discussed our state's legal precedent regarding expert testimony in legal malpractice cases:

> We have recognized the necessity of expert testimony in professional malpractice cases, and the well-settled exception to the rule that if the lack of professional skill is obvious, expert testimony is not needed. . . . More

---

[5] Notably, Dr. Whaley does not challenge the circuit court's separate adverse findings on summary judgment with respect to his claims that HHS and Hoyer committed legal malpractice when they allegedly abandoned his capital account claim and failed to call him as a witness. *See Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 140 n.10, 506 S.E.2d 578, 583 n.10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived").

specifically, in *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love*, *PLLC*, 209 W. Va. 318, 547 S.E.2d 256 (2001), we held that expert testimony is admissible in legal malpractice cases but declined to delineate "[the] specific parameters beyond the sound discretion of the court regarding the proper scope of expert testimony in the area of legal malpractice." *Id.* at 334, 337 S.E.2d at 272.

*Scotchel v. Fluharty*, No. 21-0572, 2022 WL 3905940, at *6 (W. Va. Aug. 30, 2022) (memorandum decision). Based upon the record in this case, we conclude that the circuit court acted within its sound discretion when it determined that Dr. Whaley was required to produce expert testimony to support his claim for legal malpractice. Therefore, its award of summary judgment to HHS and Hoyer was appropriate.

Accordingly, we affirm.

Affirmed.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear