## CHARLESTON.

MAUDE HOWELL *v.* DR. J. F. BIGGART

(No. 6573)

Submitted February 4, 1930. Decided February 11, 1930.
(Rehearing Denied March 24, 1930.)

[redacted]

[redacted]

*E. L. Phillips,* for plaintiff in error.
*Jos. M. Crockett,* for defendant in error.

Hatcher, Judge:

This is an action for malpractice against a physician. When the plaintiff rested her case, the court directed a verdict in favor of defendant. The evidence as developed by plaintiff is as follows: She is a young married woman. Following a miscarriage, she went to the defendant for treatment. The defendant informed her that she was "in a run-down condition" and needed a tonic. The tonic was administered intraveinously, every other day. After four weeks of this treatment, the defendant increased the quantity of the injection. Following this the plaintiff vomited, chilled, became feverish and took to her bed. The defendant attended her at her home, and informed her that the medicine was causing her condition, that it would not help her unless it did make her sick, and that she would get all right. As soon as she recovered from that "sick spell" she went to the defendant's office. At that time she had commenced to break out with a rash. The defendant observed the rash, but gave her "another shot in the arm." The rash became much worse and in a day or so she returned to the defendant. He counselled her to endure the Spartan treatment, gave her "another dose" and directed her to return the following morning if she were

no better, and he would then give her medicine to drive the rash away. She did return the next day, but the defendant was not at his office. She waited there for an hour or so and then made unavailing inquiry in the neighborhood for him. She continued her search for several days, but was unable to find him, and as her condition had grown worse she then consulted other physicians. Her malady was diagnosed by one of them as an extensive dermatitis resulting from arsenic. By that time several parts of her body were very much swollen. Treatment gave her little, if any, relief. Her skin peeled off, her hair and eye lashes came out and her toe and finger nails came off. Her body was raw for several days, and she suffered as if from a severe burn. She was in bed for about eight weeks. Her hair and finger nails had grown back at the time of the trial, but there had been no new formation of toe nails. Her finger nails were irregular and her fingers rough and blunt. She had a rapid heart action, was nervous, weak and in a generally bad condition.

Defendant contends that no physician has testified that his treatment of plaintiff was unskillful and that want of skill can be proved only by expert testimony. The rule supporting that contention is well established, but like all general rules is subject to exception. The rule is sound "when soundly applied." *Wharton* v. *Warner,* 75 Wash. 470, 475. Wigmore, who heartily approves the rule, says: "It must be understood that this rule-of-thumb may not always be applicable on the facts." 4 Wigmore on Ev., 2nd Ed., sec. 2090, p. 456. In *Pettigrew* v. *Lewis,* 46 Kan. 78, quoted by Wigmore in support of the rule, the court concedes: "Cases may arise where there is such * * * want of skill * * * as to dispense with the testimony of professional witnesses." In *Francis* v. *Brooks,* (Ohio) 156 N. E. 609, the exception to the rule is expressed concretely as follows: "Expert testimony is not essential in all cases to enable the jury to determine whether a physician, surgeon or dentist has been guilty of malpractice, and if violation of physician's duty to patient appears otherwise, plaintiff may refrain from calling expert witnesses."

There being no denial of plaintiff's evidence, we assume it to be true that defendant told her the treatment was causing

the dermatitis, and that it did so. The dermatitis and its sequela were far worse than her condition beforehand. It is a matter of common experience and observation that treatment for "a run-down condition" should not produce such radical and distressing results as the patient here suffered. Expert testimony to that effect is therefore not requisite. "If a physician undertakes to administer a medicinal poison like strychnine or arsenic or morphine, it would be a startlingly illogical proposition to hold that the question whether he used due care is to be determined by expert evidence alone." *Evans* v. *Roberts,* 172 Iowa 653, 661. 48 C. J., p. 1150-1; 24 R. C. L., p. 407. The effects of the treatment on plaintiff were so extraordinary when considered in connection with the other facts as to make out a *prima facie* case of negligence and to cast upon the defendant the burden of justifying the treatment. *Evans* v. *Roberts, supra,* 659.

After the defendant had knowingly induced such radical and distressing results, it was his absolute duty to remain where he could be reached or provide a competent physician in his place. *Young* v. *Jordan,* 106 W. Va. 139, 141. Counsel for defendant contend that the rule in the foregoing decision does not apply here, because at the time the defendant absented himself from the community the plaintiff could travel around and see other physicians. This fact does not relieve the defendant of his professional obligation to her. It appears that dermatitis may be produced by "hundreds" of causes. Consequently, any physician unfamiliar with her treatment would have had to surmise the cause of her dermatitis, and would therefore not have been as competent to treat the case as one having information of its cause. The defendant cannot excuse his lapse of duty to her merely on the ground that other physicians were available.

Some five days after defendant departed, plaintiff learned that defendant had asked Dr. Porter to look after defendant's patients "if any of them went to Dr. Porter," but defendant had given Dr. Porter no information whatever about plaintiff. This bare request of Dr. Porter by defendant did not satisfy his obligation to provide plaintiff a physician in his stead.

Dr. Porter may have been competent in a general sense, but for lack of information as to the medicine theretofore given plaintiff, he certainly was not as prepared to treat the results as the defendant should have been. Besides, the defendant should have definitely informed the plaintiff that Dr. Porter would care for her, and not have left the arrangement to be discovered by her casually or by chance.

We are therefore of opinion that the circuit court erred in striking out the plaintiff's evidence. The judgment is reversed and a new trial granted.

*Reversed; new trial awarded.*