Mrs. Estelle C. MURRAY, Administratrix of the Estate of Woodroe D. Murray, Deceased, Appellee,

v.

UNITED STATES of America, Appellant.

No. 9030.

United States Court of Appeals Fourth Circuit.

Argued Nov. 19, 1963.

Decided March 9, 1964.

Pauline B. Heller, Attorney, Department of Justice (John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Attorney, Department of Justice, and C. V. Spratley, Jr., U. S. Atty., on brief), for appellant.

R. R. Ryder, Richmond, Va. (Martin & Ryder, Richmond, Va., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and BARKSDALE, District Judge.

ALBERT V. BRYAN, Circuit Judge.

Under the Federal Tort Claims Act, 28 U.S.C. § 1346, the Administratrix of the estate of Woodroe D. Murray obtained a judgment in the District Court for damages for his death on the asserted ground that it was due to the neglect of a Veterans Administration Hospital physician. The trial judge determined there was, as a matter of law, such a breach of duty on the part of this doctor. With the facts not in conflict, we think the legal conclusion incorrect and so the award must be vacated.

Soon after midnight of December 26, 1960 at their home in Richmond, Virginia, Estelle C. Murray, wife of the decedent, called a local rescue squad for as-

sistance because her husband's behavior suggested he was mentally disturbed. Murray, a disabled veteran, consented to go with them to the Veterans Administration Hospital near Richmond, where he was received by the admitting physician, Dr. Cohen.

To the doctor he appeared to be alert and able to walk and talk, but examination disclosed he was suffering from acute chronic alcoholism. Because of his agitation, he was given 5cc's of paraldehyde, a sedative. Within a few minutes, Murray lapsed into semicomatoseness, a condition of self-helplessness which usually follows administration of paraldehyde.

Regulations precluded admission to the Veterans Hospital of a patient suffering from alcoholism. Following his examination and diagnosis, Dr. Cohen sent Murray to the Medical College of Virginia Hospital, accompanied by an attendant and a guard. He recognized the danger of possible nausea of the patient with strangulation from the vomitus. At the College Hospital, Murray was seen by Dr. Crow in the emergency room. The patient was then unconscious and in no apparent distress. Dr. Crow examined him, saw no sign of external injury, and after listening to his heart and lungs with a stethoscope, palpating the abdomen, and taking his pulse and blood pressure, found nothing alarming internally.

In answer to Dr. Crow's telephone inquiry as to why the patient had been sent to the Medical College, he was told by Dr. Cohen that the Veterans Hospital was without facilities to care for intoxicated persons. Dr. Crow was also informed by Dr. Cohen of the latter's attention to Murray, including the oral administration of the paraldehyde. Dr. Crow told Dr. Cohen that the patient, who seemed to be still asleep, would be turned over to the Richmond police department. Dr. Cohen neither protested this proposal nor instructed Dr. Crow upon the treatment or placement of the patient.

To the police officers coming for him at the College Hospital, Murray appeared to be in a deep sleep. They took him to the police station and placed him on the floor. Within a few minutes he commenced to vomit and gasp for breath. Immediately artificial respiration was applied, an ambulance summoned and he was returned to the College Hospital, where he was found dead on arrival. The probable cause of death, as reported after autopsy, was aspiration of vomitus incident to acute alcoholism. Alcohol in his blood was ascertained to be 0.14% by weight.

From these evidentiary facts, the District Court concluded that Dr. Cohen was not negligent in declining admission of the patient, in administering paraldehyde, in sending him to the College Hospital, or in reporting to Dr. Crow what had been done to Murray while at the Veterans Hospital. However, the Court found Dr. Cohen neglectful in this:

"When Dr. Cohen learned from Dr. Crow that Dr. Crow intended to turn Mr. Murray over to the Police, Dr. Cohen was under the duty *either to protest this action and insist that Mr. Murray be kept under medical observation* by trained personnel at the Medical College of Virginia, or if his protest in this regard was unavailing, *to dispatch attendants to return Mr. Murray to McGuire's* [Veterans] *Hospital* where he could be kept under observation by medically trained personnel until he regained consciousness. In short, Dr. Cohen could safely assume that the Medical College of Virginia would provide adequate observation and care for the patient. When, however, he was expressly advised that the Medical College of Virginia would not furnish observation and care, a duty arose upon him to provide such observation and care.

"The existence of this duty is clearly shown from the evidence. The administration of 5cc's of paraldehyde increased the danger

that the decedent would aspirate vomitus if he vomited. While the 5cc's of paraldehyde did not, in itself, render the patient unconscious or cause him to be semicomatose, it was a contributing cause of his condition. A person who was intoxicated and who had been given paraldehyde should be under observation upon becoming comatose, and the average doctor practicing in the City of Richmond would be aware of this and would keep such a patient under observation." (Accent added.)

The District Judge expressly noted, too, that all the medical witnesses, both for the plaintiff and for the defendant, were in accord that in sending the patient to the College Hospital the doctor acted prudently, and was thereafter relieved of further obligation to the patient, although aware that he would be placed in the care of the police department. This was, indeed, the considered judgment of the profession in the area. But the Court determined that the duty of the doctor in the circumstances was not a factual determination to be made from medical expert opinion, but rather was a question of law.

The view of the Court was that upon learning of the intended delivery of Murray to the police by the Medical College Hospital, the doctor at the Veterans Hospital was obligated to see that the patient was not released to the police. The Court thought that having induced the patient's comatose state the doctor was required to continue his oversight of the patient until he regained consciousness. We find no support in the facts or in law for this position.

■■■ Quite properly resolved upon the law of Virginia, 28 U.S.C. 1346(b), the decision rested primarily on the doctrine that a physician having undertaken employment may not abandon the patient but must tender his services so long as they appear needed. Continued personal attention may be deemed unnecessary, but the physician must then advise the patient upon his future care and treatment. Vann v. Harden, 187 Va. 555, 47 S.E.2d 314 (1948). This obligation the District Court felt extended Dr. Cohen's duty of supervision beyond his own custody of the patient until the patient was able to understand or follow instructions.

■■■ But the relationship of Dr. Cohen to Woodroe Murray, it should be emphasized, was not the usual circumstances of doctor and patient with the attending physician deciding to hospitalize the patient. There, of course, the initial relation remains unbroken, for the patient's removal to the hospital is simply a step in the doctor's attendance upon him. Here, however, Dr. Cohen was merely called upon for help. Murray had not previously been his patient. All he was doing was assisting Murray to a place where he could be properly treated.

Surely, as the District Judge found, there was no lapse in care in directing and executing the transfer to the College Hospital. This is confirmed by the ready reception of Murray there and the prompt, and far more than cursory, examination of him. Furthermore, Dr. Cohen was certainly entitled to presume that thereafter the Medical College would do whatever it thought best for the patient. Moreover, he had no right or cause to press his views upon the College doctor or supplant his judgment. In sum, we find no authorities holding, and we are unwilling to declare, that Dr. Cohen's duty went further than a careful and safe delivery of the patient into competent hands. See Howell v. Biggard, 108 W.Va. 560, 152 S.E. 323 (1930). This he did. With no default in duty, neither he nor his employer is answerable for Woodroe Murray's death.

The judgment of the District Court must be vacated, and the action remanded with directions to dismiss it.

Vacated and remanded for final judgment.