ELIZABETH ANN ROBERTS, AN INFANT, WHO SUES BY HER
MOTHER AND NEXT FRIEND, RUTH ROBERTS

*v.*

RICHARD O. GALE

(No. 12287)

Submitted September 8, 1964. Decided December 15, 1964.

*Chauncey H. Browning, Jr.,* for appellant.

*Barley & Goode, Albert A. Barley, Hudgins & Coulling, Paul S. Hudgins,* for appellee.

CAPLAN, JUDGE:

Elizabeth Ann Roberts, an infant, who sues by her mother and next friend, Ruth Roberts, instituted this action against the defendant, Richard O. Gale, a physician, for damages which she alleges she sustained as a result of the defendant's negligence in administering certain medical treatment. In the trial of this case the court, at the conclusion of the plaintiff's evidence, directed the jury to return a verdict for the defendant, entered a judgment for the defendant and dismissed plaintiff's cause of action.

The plaintiff here complains that such action of the trial court constitutes error. Although several assignments of error are relied upon for reversal of this case, full consideration of such assignments presents for determination a single issue. Did the plaintiff, in the presentation of her evidence, establish a prima facie case of negligence against the defendant, upon which the jury properly could have returned a verdict in her favor?

The plaintiff's primary allegation is that the improper application of dry ice to her face constituted negligence. She also claims that the defendant was negligent in failing to further treat her or advise that additional treatment was necessary. In order to determine the validity of the plaintiff's position it is essential to consider the evidence adduced at the trial.

Ruth Roberts, the mother of the plaintiff, testified that the plaintiff was born in the City of Welch on November 15, 1951; that at the time of her birth she appeared to be a normal, healthy baby; that approximately three weeks thereafter a small red spot about the size of a "pin scratch" appeared on the left side of the infant's face; and that over the period of the next few weeks she observed that the red spot was growing. Being concerned with this blemish on her child's face, she took her to see Doctor Saunders, who ad-

vised her to have the child examined by Doctor Gale, the defendant herein.

Her further testimony reveals the following: When the plaintiff was approximately three months of age she, accompanied by her father, took the child to Doctor Gale's office. Doctor Gale looked at the child and told Mrs. Roberts that the red spot was a small blood tumor and that he would burn it off with dry ice. Upon obtaining a piece of dry ice, he shaved it to a point in preparation for its use on the child's face. After telling her that this treatment would result in a bad burn, the defendant applied the dry ice to the spot on the baby's cheek. It was applied with some force for over a minute, during which time the child cried and apparently suffered great discomfort. This treatment caused the plaintiff's cheek to become discolored over an area estimated to be the size of a quarter and a depression or hole in the tissue of her cheek became apparent. Also, a sore developed inside the child's cheek. Within a few days after this treatment the child's face began to swell and continued to swell for a period of approximately fourteen months. During this period she took her child to Doctor Gale several times but the defendant did not further treat the child, saying that "mother nature would take it off".

Describing the condition of the child, Ruth Roberts testified that "Elizabeth Ann's face was blue, every vein in her eyes was broken, across her mouth, up in here and a big one behind her ear. Q. Was her face swollen. A. Yes, sir. Q. Had it continued to swell or had it reached a point where it was stopped? A. No, sir. It was still breaking."

Mrs. Roberts' father also testified as to the application of the dry ice by the defendant. His testimony was similar to that of his daughter, although he estimated that the dry ice may have been applied for as long as two minutes. The testimony of other lay witnesses supported that of Mrs. Roberts as to the condition of the plaintiff after she had been treated by the defendant.

When it became apparent that the child's condition was not improving, her mother took her to Cincinnati, Ohio, where she was examined and treated by Doctor Esther C.

Marting of that city. Doctor Marting, a radiation therapist, whose deposition has been made a part of the record, described the child's condition as follows: "Well, this lesion consisted of a large puffy swelling on the left cheek, extending up onto the bridge of the nose and down into the upper lip. It had a bluish color. On the surface there was some splotches of bright red coloring. I think there was about, as I remember it, there was some scarring along the cheek, the lower part of the cheek." She described the condition as a thick, cavernous type of hemangioma.

In her deposition she stated that she could not have known the condition of the child's face when Doctor Gale treated her; that the use of dry ice is an accepted method of treatment of a capillary hemangioma; that the growth on the child's face could not have been caused by the dry ice treatment; that there was no hole or perforation in the cheek when she saw her; that the only evidence of former treatment was some scar tissue on the cheek, but that the amount of scarring was not unusual; and that, in her opinion, the child had both the surface and cavernous types of hemangioma at the time she was brought to her for treatment.

It further appears from the deposition of Doctor Marting that she administered radium treatments to the plaintiff nine times between May 5, 1953 and March 30, 1956. These treatments caused considerable regression of the growth and, as a result thereof, the lesion was about one half of its original size. Doctor Marting then told the child's mother that she had accomplished as much as could be hoped for with radium and advised her to take the plaintiff to a plastic surgeon.

In accordance with this advice, Mrs. Roberts contacted Doctor Clyde Litton, a plastic surgeon in Charleston, and arranged to have plastic surgery performed on her daughter. The operation was performed on August 17, 1956. Mrs. Roberts testified that the operation resulted in a great improvement in the appearance of her child's face, but that two additional operations will be required.

During the trial several physicians were called as witnesses by the plaintiff. Also, the deposition of Doctor Mar-

ting, of Cincinnati, was read to the jury. The matters to which Doctor Marting testified have been related above. None of the other physicians called as witnesses had treated or examined the plaintiff. They were queried, on the basis of a hypothetical question, as to the propriety of the treatment administered to the plaintiff by Doctor Gale.

In response to the hypothetical question which set out many of the facts of this case and particularly those dealing with the actual dry ice treatment, Doctor Stephen Mamick stated that, in his opinion, the treatment was adequate and that other doctors in the area "would probably do it in a similar fashion". This witness had never treated a capillary hemangioma but said that the use of dry ice was an accepted method of treatment.

Doctor F. L. Johnston, upon being asked the same hypothetical question, testified as follows: "It is my opinion that the treatment you describe is acceptable and that the result you describe is to be expected if you expect to cure the tumor. Q. So that we may be sure we understand you, Doctor, you are referring not only to the use of the dry ice but the method in which it was applied in this case? A. Yes. Q. For a surface capillary hemangioma? A. Yes."

Doctor A. J. Villani testified that he had treated several patients who had capillary hemangiomas and that his method of treatment was the application of dry ice. While his testimony indicated that he may use the dry ice in treating a patient in a manner different from that employed by the defendant, he did not say that the defendant's treatment constituted negligence. He stated that he never timed the application of dry ice but applied it until the lesion became "blanched and looked like frost". Furthermore, he said that one could not say how long the treatment should last because it was dependent upon the condition of the hemangioma. This witness said that the hypothetical question could not be answered with a yes or no. He did, however, upon further questioning, say that "If it comes to the question as to holding the dry ice on the baby's face until a hole is produced, I think any medical opinion would be that is not the proper procedure".

Doctor Jorge Ribeiro testified that he had used dry ice in the treatment of capillary hemangiomas; that the application of dry ice should not last for more than thirty seconds but may be longer depending upon the size of the lesion; and that such application must cause a depression in the skin because it has to be applied with some force. In response to the hypothetical question, this witness stated that the manner and method of treatment were proper. Counsel for the plaintiff claimed surprise and was permitted by the court to examine him as a hostile witness. Upon further examination Doctor Ribeiro refused to assume as true the facts stated in the hypothetical question.

On avowal, Doctor Ribeiro persisted in his position that the treatment by dry ice could not produce a hole in the child's face as described in the hypothetical question. He testified: "A. As I said before, I don't believe that can happen. Q. But assuming that it did happen, it was not proper treatment or not? A. Assuming that it did happen, it was not proper treatment, but I don't believe and don't think it could happen. Q. I understand that, but assume it could happen, which you must do for the purpose of this question, was it proper or not? A. If it happened, it would not be the proper treatment." The court did not permit this testimony to go to the jury. We think it was properly within the discretion of the court to withhold such testimony. It did not unequivocally assume the truth of the facts and could do nothing but confuse and mislead the jury.

The complaint in this case relates to the puffy and swollen condition of the child's face which developed after the treatment administered by the defendant. The testimony of Doctor Marting, the only expert witness who examined the plaintiff, clearly reveals that the child's affliction was a cavernous hemangioma. This is an unnatural growth of blood vessels deep beneath the surface of the skin as opposed to a capillary hemangioma which involves veins at the surface of the skin. The evidence is undisputed that Doctor Gale was employed to treat a capillary hemangioma, not the cavernous type which developed later. Furthermore, all of the expert testimony establishes that the treatment adminis-

tered to the plaintiff by the defendant could not produce a cavernous hemangioma or cause its development.

This brings us to the consideration of whether the defendant was negligent in his treatment of the capillary hemangioma. The plaintiff seeks to establish through certain lay witnesses that the defendant's treatment constituted negligence. Although the plaintiff also produced expert witnesses, none of them testified that the treatment administered by the defendant for the capillary hemangioma was in any manner improper. There is no medical evidence which would indicate negligence in the administration of the treatment for which the defendant was employed.

In an action for damages against a physician for negligence and want of professional skill in the treatment of an injury or disease, the burden is on the plaintiff to prove such negligence or want of professional skill and that it resulted in the injury of which complaint is made. *Dye* v. *Corbin,* 59 W. Va. 266, 53 S. E. 147; *White* v. *Moore,* 134 W. Va. 806, 62 S. E. 2d 122. In such case the plaintiff must not only prove negligence but also must show that such negligence was the proximate cause of the injury. In this respect actions involving medical malpractice do not depart from the ordinary rules of negligence. The evidence in this case falls short of showing that the defendant's act was the proximate cause of the plaintiff's ultimate condition. To the contrary, Doctor Marting and Doctor Ribeiro testified that the treatment administered by the defendant could not produce or cause the development of a cavernous hemangioma.

In the instant case the only proof of negligence offered was that of lay witnesses. None of the medical testimony supported the charge of negligence in the treatment administered to the plaintiff by the defendant. It is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses. *White* v. *Moore, supra;* 41 Am. Jur., Physicians and Surgeons, Section 129; 70 C.J.S., Physicians and Surgeons, Section 62d (2). This rule has been qualified to permit negligence to be established by lay witnesses in cases where negligence or want of professional skill is so obvious as to dis-

pense with the need for expert testimony. *Buskirk* v. *Bucklew*, 115 W. Va. 424, 176 S. E. 603; *Howell* v. *Biggart*, 108 W. Va. 560, 152 S. E. 323. We are of the opinion, however, that the rule set out in the two latter cases has no application to the instant case. Here the plaintiff's condition required specialized treatment. To prove negligence or want of professional skill in such treatment the testimony of one with special knowledge is essential. An examination of the record reveals that no such testimony was adduced in the presentation of the plaintiff's case.

Although not strongly urged in the argument or brief made and submitted on her behalf, the plaintiff alleges in her complaint that the defendant was negligent in failing to treat her condition or to advise her that further treatment was necessary. In the circumstances of this case we think that this contention is without merit.

The evidence in the record clearly shows that Doctor Gale was employed to remove a small red spot from the plaintiff's face; that he undertook only the removal of that blemish; that he did so in an approved manner; and that the portion of the plaintiff's face which he treated, that is, the capillary hemangioma, healed in the usual and expected manner. The medical testimony revealed that the scar tissue which resulted from the treatment by dry ice was not unusual.

There is no showing in the record which would in any manner indicate that the defendant caused the condition of which the plaintiff complains. The medical evidence expressly reveals that the dry ice treatment could not cause the condition which developed. The swelling on the plaintiff's cheek was the result of a cavernous hemangioma, an ailment entirely separate and apart from that which the defendant treated. He was under no duty to treat this new condition which developed, not as a result of his treatment, but entirely independent thereof. Furthermore, there is no showing that the defendant ever undertook treatment of the cavernous hemangioma. Clearly one can not be negligent for the existence of a condition which he did not undertake to treat.

We come now to the consideration of the principal ques-

174

tion presented in this case, that is, whether the plaintiff established a prima facie case of negligence upon which the jury could have returned a verdict in her favor. The well settled rule requires the plaintiff in making his case to present evidence which, when considered in the light most favorable to him, establishes a prima facie right of recovery, and if he fails to do so the defendant is not required to offer any evidence and a verdict will be directed in favor of such defendant. *White v. Moore,* 134 W. Va. 806, 62 S. E. 2d 122; *Dye v. Corbin,* 59 W. Va. 266, 53 S. E. 147; *Hi Williamson & Co. v. Nigh,* 58 W. Va. 629, 53 S. E. 124. See also *Prettyman v. Hopkins Motor Co.,* 139 W. Va. 711, 81 S. E. 2d 78; *Howell v. Biggart,* 108 W. Va. 560, 152 S. E. 323; *Buskirk v. Bucklew,* 115 W. Va. 424, 176 S. E. 603; *Diddle v. Continental Casualty Co.,* 65 W. Va. 170, 63 S. E. 962, 22 L.R.A., N. S., 779; 88 C.J.S., Trial, Section 208; 53 Am. Jur., Trial, Section 162, et seq.

Upon consideration of all of the evidence in the record of this proceeding we are of the opinion that the plaintiff did not establish a prima facie case of negligence against the defendant. Therefore, the judgment of the Circuit Court of McDowell County is affirmed.

*Affirmed.*