IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-1042
_____

FILED

June 9, 2022

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

FAIRMONT TOOL, INC.,
Defendant Below, Petitioner,

v.

NORVEL LOUIS OPYOKE,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Marion County
The Honorable Patrick N. Wilson
Civil Action No. 15-C-252

REVERSED
_____

Submitted: January 25, 2022
Filed: June 9, 2022

J. Robert Russell, Esq.                           Karl Kolenich, Esq.
David L. T. Butler, Esq.                          Klie Law Offices, PLLC
Shuman McCuskey Slicer PLLC                        Buckhannon, West Virginia
Morgantown, West Virginia                          Counsel for Respondent
Counsel for Petitioner

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE WOOTON dissents and reserves the right to file a dissenting opinion.
JUSTICE BUNN did not participate in the decision in this case.

SYLLABUS BY THE COURT

1.      "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure [1998] is *de novo*." Syl. Pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).


2.      To prevail on a claim that an employer unlawfully interfered with an employee's rights under The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, the employee must prove that (1) he or she was eligible for FMLA benefits, (2) the employer was covered by the FMLA, (3) the employee was entitled to leave under the FMLA, (4) he or she provided notice of the intention to take leave, and (5) the employer denied the employee FMLA benefits to which he or she was entitled. The employee must also prove that he or she was prejudiced by the employer's violation of the statute.

**HUTCHISON, Chief Justice**:

Following a diagnosis of cancer in April of 2015, Respondent Norvel Louis Opyoke[1] requested information from his employer, Fairmont Tool, Inc., about his right to take leave under The Family and Medical Leave Act of 1993 ("FMLA").[2] For approximately four months, Fairmont Tool failed to advise respondent of his FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).[3] Respondent sued Fairmont Tool in the Circuit Court of Marion County asserting various claims, including that Fairmont Tool interfered with, restrained, or denied the exercise of or the attempt to exercise, his rights under the FMLA,[4] for which a jury awarded monetary damages. In this appeal from that verdict, Fairmont Tool contends that respondent failed to present any evidence that he was prejudiced by the company's technical violation of the FMLA and that, therefore, the circuit court erred in

---

[1] On January 26, 2021, Tyler Opyoke, Administrator of the Personal Estate of Norvel Louis Opyoke, filed his Notice of Suggestion of Death advising that Norvel Louis Opyoke died on December 22, 2020. *See* W. Va. R. Civ. P. 25. For ease of reference, however, we refer to Norvel Louis Opyoke as "respondent" in this opinion.

[2] *See* 29 U.S.C. § 2601, *et seq.*

[3] 29 U.S.C. § 2615(a)(1) provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

[4] The FMLA "creates a private right of action to seek both equitable relief and money damages 'against any employer (including a public agency) in any Federal or State court of competent jurisdiction,' § 2617(a)(2), should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights, § 2615(a)(1)." *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 724 (2003).

failing to grant Fairmont Tool's post-trial motion for judgment as a matter of law under Rule 50(b) of the West Virginia Rules of Civil Procedure.

Upon our thorough review of the briefs, record, oral argument, and the pertinent legal authorities, and for the reasons set forth below, we agree with Fairmont Tool and reverse the jury's verdict.

## I.      Facts and Procedural History

In October of 2015, Respondent filed a complaint against Fairmont Tool alleging various claims relating to his former employment and subsequent layoff from the company. Respondent's claims of discriminatory discharge in violation of the FMLA ("FMLA retaliation")[5], common law retaliatory discharge, failure to notify of FMLA rights ("FMLA interference"), and the tort of outrage were presented at a jury trial in July of 2017.[6] Respondent also sought punitive damages.

---

[5] Respondent alleged that Fairmont Tool terminated his employment in retaliation for requesting leave under the FMLA. An FMLA retaliation claim alleges "violations of the[] proscriptive rights aris[ing] under 29 U.S.C.A. § 2615(a)(2), which states that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'" *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). As discussed *infra*, the circuit court granted judgment as a matter of law in favor of Fairmont Tool on this claim, as well as on respondent's common law wrongful discharge claim.

[6] Respondent voluntarily dismissed his claims of religious discrimination and hostile work environment prior to trial.

The evidence at trial established that respondent was employed by Fairmont Tool, an oilfield service provider, from 2010 until July 20, 2015. He was hired and worked as a machinist until sometime in 2014 when, following a diagnosis of cancer in 2012 and time off for treatment that included the removal of one of his kidneys,[7] he was moved to the less rigorous position of dimensional inspector. Then, in April of 2015, respondent was diagnosed with bladder and urethral cancer, which required high-dose chemotherapy treatment. Respondent was advised that he had a six-month window in which to begin treatment. Respondent testified that his physicians wanted to begin treatment "[a]s soon as possible. As soon as I got the leave okayed[,] [respondent's physician] wanted to start then. He knew I wouldn't be able to work while undergoing the treatment."

Respondent testified that immediately upon receiving his diagnosis, he "started requesting my FMLA paperwork" from several people at Fairmont Tool, including his immediate supervisor, Patrick Stevens. Respondent testified that when he told Mr. Stevens that he was going to need time off from work, Mr. Stevens said "he understood but that as far as the FMLA goes, he was told [Fairmont Tool] didn't offer that by one of

---

[7] Respondent had a previous bout with cancer when he was twenty-one years old, approximately twenty years before he began his employment at Fairmont Tool. The president of Fairmont Tool, Nathan Kincaid, testified that he was aware that respondent previously had cancer before he was hired to work there. Respondent testified that following his diagnosis in 2012, he "didn't know about the FMLA possibility when I had my kidney removed and I was off for three months, and beyond that, I was never off more than one day a week. There may have been a two day week, but we tried to schedule all my appointments and tests so that if there were any problems I would just either miss a Wednesday or a Friday." Mr. Kincaid testified that "we had no problem with" the time off that respondent took during his previous illness.

the office people. . . . [H]e had no idea what FMLA was." Nonetheless, for an approximately three-month period beginning in April, respondent continued to ask Mr. Stevens about FMLA "[a] lot. I mean, it was – I would go to Pat at least every week. Pat, I'm going to need the papers. Pat, can you find something out about the FMLA?" In contrast, Mr. Stevens testified that, although he was aware of respondent's cancer diagnosis and need for treatment, respondent never asked him about taking time off under FMLA and that, if respondent had asked, he would have advised him to speak with Jamie Kelley who, as Fairmont Tool's human resources manager, is in charge of FMLA.

Respondent further testified that, after he was diagnosed, he also spoke with the company's office manager, Tammy Hendricks,[8] who he contends told him that "FMLA wasn't offered at Fairmont Tool."[9] Ms. Hendricks denied ever speaking with respondent about FMLA or ever telling him that Fairmont Tool does not offer FMLA.

On July 4, 2015, respondent experienced an emergency medical episode related to the cancer that required surgery and that he be absent from work the following week. On July 13, 2015, respondent provided Ms. Kelley with a "Return to Work" slip on which he wrote that he needed a "copy of [FMLA] papers" and that he would begin

---

[8] Respondent testified that he was "sent to talk to Tammy[,]" but did not indicate by whom he was sent.

[9] Respondent also testified that he requested FMLA information from Brian Lamb, who "helped write the Employee Handbook, which stated FMLA was an option . . . but [he] didn't know who to direct me to." Mr. Lamb did not testify at trial.

chemotherapy treatment on July 15th. Ms. Kelley testified that she was previously unaware of respondent's cancer diagnosis and could not explain why respondent did not request FMLA information from her when his supervisors had failed to provide it early on as he claimed. According to Ms. Kelley, she advised respondent that he was eligible for FMLA leave and requested that he provide "medical documentation to let me know what time he would need off, how long he would need off, if it was going to be a three month block of time or if it was going to be one day off every week for the next six months." In contrast with Ms. Kelley's testimony, respondent testified that Ms. Kelley did not ask him for any additional information about his medical condition and treatment.

On July 16, 17, and 20, 2015, just after respondent requested FMLA leave following his emergency surgery, Fairmont Tool laid off forty-one of its then-109 employees. Nathan Kincaid, Fairmont Tool's president, testified that the decision to lay off employees was precipitated by a lack of work at the company that was due to a downturn in the oil and gas industry. Among the employees who were laid off were two of the company's three inspectors. Respondent, who had the least experience of the three inspectors, was included in the layoffs. Mr. Kincaid testified that he did not know about respondent's intention to take FMLA leave and that respondent's intention to take FMLA leave was not a factor in the company's decision to include respondent in the layoffs. Similarly, Ms. Kelley testified that she did not discuss the fact that respondent requested FMLA leave on July 13th with Mr. Kincaid or any of the supervisors involved with the layoff decisions.

5

Respondent testified that, in April, he wanted to begin treatment "as soon as possible" but that the FMLA leave "was being put off." When asked how he felt about the delay in treatment, respondent testified,

> It was my life on the line. When you're dealing with cancer, every minute counts, every one, and to say no we're not going to deal with – the staff at Fairmont Tool is so undertrained. I mean, to – would it have affected the outcome of my cancer, we'll never know, but we do know what happened.

Respondent further testified that, after he was laid off on July 20th, he was "feeling good enough to work" until August 16th, when he began chemotherapy treatment.[10] Up until that time, he was "able to draw unemployment. I used the[] two weeks of unemployment to pay for two months of Cobra Insurance so I was able to get two months of treatment." After that, "I couldn't get any treatments. I had no insurance. So things weren't started up again until the 1st – some time after the first of the year I was able to get a medical card." Respondent testified that he had been referred to a specialist in Arizona but, when he

> lost the insurance and had to get Medicaid, [the specialist] was totally out of the question then. It was a death sentence. It's hard to put into words to know that I had a medical team blessing – they were trying, but just due to lack of unproperly trained staff at Fairmont Tool, I lost my options. Maybe one day they'll get me healed enough to return to work to where if it reoccurs I can go see this man, but as far as that point in time, all of our plans fell through. It's like having the rug pulled out from under you.

---

[10] Although treatment was originally planned to begin on July 15, 2015, respondent was diagnosed with an infection that ultimately delayed treatment until August 16th.

6

In connection with his claim that he was wrongfully discharged, petitioner testified that he sustained economic damages consisting of (1) lost wages for the period of July 20, 2015 (the date he was laid off), until August 16, 2015 (the date he was no longer physically able to work), which amounted to $3,520.00, and (2) lost benefits equaling the portion of respondent's insurance paid by Fairmont Tool for a three-month period,[11] which amounted to $881.22.[12]

At the close of respondent's case-in-chief, Fairmont Tool moved for judgment as a matter of law on all claims. *See* W. Va. R. Civ. P. 50(a). The circuit court granted Fairmont Tool's motion as to respondent's claims for common law retaliatory discharge and FMLA retaliation, concluding that respondent failed to prove that either Mr. Kincaid or any of the supervisors involved in the layoff decisions knew that respondent had requested FMLA leave when the decision to layoff respondent was made. Respondent does not appeal this ruling.

In connection with its motion for judgment as a matter of law on the FMLA interference claim, Fairmont Tool argued that respondent failed to present any evidence of

---

[11] *See* 29 U.S.C. § 2614(c)(1) (requiring employer to maintain health coverage for the duration of the twelve weeks of unpaid leave to which eligible employee is entitled under FMLA).

[12] Fairmont Tool objected to the exhibit accompanying this testimony to the extent it (1) denoted the date respondent was "terminated" rather than "laid off" and (2) indicated that the total amount of lost wages did not include an estimate for overtime earned. The exhibit was admitted with redactions reflecting Fairmont Tool's objections.

harm resulting from the company's failure to notify respondent of his FMLA rights from April to July. Fairmont Tool argued that, "even if there is a technical violation [of the FMLA], the plaintiff must show that he was harmed in some [way]." Respondent countered that

> [a]s far as a harm, . . . it was his and his medical provider's intention to start treatment right away. That was what was needed to be done. That he needed to start right away, that he testified that the emotional issue that that caused not being able to start, not being able to get anybody to cooperate, and not being able to take those cancer treatments for months while he tried to work this out and people told him that they don't do FMLA or just hold on and blew him off.

> Fairmont Tool replied that "an[] employer does not dictate [an employee's] treatment schedule" and that Fairmont Tool did not prevent him from seeking medical treatment. As for the tort of outrage claim, Fairmont Tool argued that respondent failed to satisfy the elements of such a claim.

The circuit court denied Fairmont Tool's motion for judgment as a matter of law as to respondent's claims for FMLA interference and the tort of outrage, explaining that the FMLA interference claim,

> if that Count's allowed to remain[,] certainly a jury could determine that what was done regarding actions by the employer in this matter might be so outrageous to warrant damages. We've got [respondent] indicating certainly that he told people – multiple people and made people aware in the company that he may in fact need to exercise, you know, FMLA rights. He has testified as to what responses he got. I think those are questions of fact that the jury will have to determine regarding Count III [FMLA interference], and also

8

as I said, the tort of outrage would stand alone in terms of the actions of the employer to be considered by the jury.

Following Fairmont Tool's presentation of its case, it renewed its motion for judgment as a matter of law as to the FMLA interference and tort of outrage claims. [13] The circuit court denied the motion. Fairmont Tool objected to the tort of outrage claim and the issue of punitive damages going to the jury on the ground that the FMLA does not provide for the recovery of either emotional or punitive damages for alleged FMLA interference claims. [14] The circuit court overruled Fairmont Tool's objections, indicating that the tort of outrage "is a legitimate cause of action. And a reasonable jury can consider and could make a determination that the acts of the employer were . . . so outrageous, et cetera, that it would warrant compensatory and punitive damages."

The jury returned a verdict in favor of respondent on the FMLA interference claim, awarding a total amount of $4,401.22 ($3,520 in lost wages plus $881.22 in lost

---

[13] Respondent did not put on rebuttal evidence.

[14] *See e.g., Rodgers v. City of Des Moines*, 435 F.3d 904, 909 (8th Cir. 2006) (concluding that "emotional distress damages are not available under the FMLA" because the statute and its accompanying regulations do not expressly provide for them); *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1007 (6th Cir. 2005) ("[T]he FMLA does not permit recovery for emotional distress"); *Beebe v. Williams College*, 430 F.Supp.2d 18, 22 (D.Mass. 2006) ("Nowhere . . . does the FMLA mention damages for emotional distress").

benefits).[15] On the tort of outrage claim, the jury awarded respondent $50,000 for emotional distress, $75,000 for annoyance, and $50,000 for inconvenience, for a total award of $175,0000. The jury also awarded respondent punitive damages in the amount of $150,000.

Thereafter, Fairmont Tool filed a plethora of post-trial motions that resulted in the entry of multiple orders and various amended orders, the majority of which need not be recounted for purposes of this appeal. Among them was the circuit court's June 13, 2018, order that clarified a prior ruling that the issue of punitive damages should not have

---

[15] With respect to respondent's FMLA interference claim, the jury was instructed that

> [t]he measure of damages for the plaintiff is either lost wages and benefits or other expenses incurred *because of Fairmont Tool's FMLA violation.* The plaintiff can recover lost wages and benefits, or he can recover other expenses *incurred because of Fairmont Tool's actions*, but not both. If the plaintiff proved that he lost wages or benefits *because of Fairmont Tool's FMLA violation*, then the plaintiff may recover net lost wages and benefits from the date of the interference to the date of your verdict. If you find that the plaintiff did not directly lose pay or benefits *because of Fairmont Tool's violation*, then you may award the plaintiff the actual monetary loss *that directly resulted from Fairmont Tool's violation*. This amount of damages cannot exceed 12 weeks of the plaintiff's wages or salary.

(Emphasis added).

It is undisputed that the only evidence of economic damages presented was in connection with respondent's *FMLA retaliation claim*, which the circuit court dismissed following the presentation of respondent's case-in-chief.

10

been submitted to the jury based upon the evidence presented by respondent and that the punitive damages award was "duplicative of the damages awarded with regard to the tort of outrage, and was therefore, improper double recovery." Also in that order, the circuit court set aside the jury award on the tort of outrage claim because it was based upon a jury instruction that repeatedly referenced respondent's "wrongful termination" and "discharge" and instructed that respondent may recover "if the manner in which he was discharged was extreme and outrageous." Because the "the jury's finding for [respondent] on the tort of [o]utrage was based on findings regarding wrongful termination, a claim which was dismissed by the [c]ourt[,]" the circuit court found that the instruction was erroneous and clearly prejudiced Fairmont Tool. Accordingly, the circuit court granted Fairmont Tool's motion for a new trial on the tort of outrage claim. Ultimately, respondent voluntarily dismissed that claim, with prejudice.

Additionally, relevant to this appeal, on October 5, 2018, the circuit court entered an order denying Fairmont Tool's renewed Rule 50(b) motion as to the FMLA interference claim. The circuit court concluded that for an employee to succeed on an FMLA interference claim, the employee must prove that "(1) he is entitled to FMLA benefits; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *See Ragsdale v. Wolverine Worldwide, Inc.*, 535 U.S. 81 (2002). The court acknowledged that "[i]f a notice violation occurs, the FMLA grants no relief absent a showing of prejudice[,]" *see id.*, and "[w]here an employee suffers harm due to the employer's interference, or would have structured leave differently absent a failure

11

of requisite notice, he has suffered prejudice." *See Vannoy v. Fed. Res. Bank of Richmond*, 827 F.3d 296 (4th Cir. 2016).[16] The circuit court found that there was legally sufficient evidence presented upon which a reasonable jury could find that Fairmont Tool failed to notify respondent of his eligibility to take FMLA leave. With regard to evidence that respondent suffered prejudice due to Fairmont Tool's interference with respondent's FMLA rights – the element of respondent's FMLA interference claim that is at issue in this appeal – the circuit court determined that Fairmont Tool's "interference caused harm as [respondent's] treatment was delayed which resulted in medical complications further delaying treatment, inability to procure unemployment, and ultimately a feeling that [respondent] was given a 'death sentence' in light of the delay."

The numerous orders and amended orders entered during the course of this matter culminated in the entry of the Amended Judgment Order of December 2, 2020. In that order, the circuit court, inter alia, granted respondent's motion for prejudgment interest, liquidated damages, reasonable attorneys' fees, and litigation costs, all in relation to the jury's verdict on the FLMA interference claim. In total, a judgment in the amount of $67,639.82 was entered in respondent's favor. This appeal followed.

---

[16] The jury was instructed on the elements of respondent's FMLA interference claim including that it must determine whether Fairmont Tool failed to notify respondent of his eligibility to take FMLA leave and whether such failure "resulted in an impairment of the plaintiff's rights and resulting prejudice, i.e., the plaintiff would not have structured his leave in the same way had notice been provided."

## II.     Standard of Review

Our review is focused on the circuit court's order denying Fairmont Tool's renewed 50(b) motion as to respondent's FMLA interference claim:

> The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure [1998] is *de novo*.

Syl. Pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009). Furthermore,

> "[i]n determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syllabus Point 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983).

*Fredeking*, 224 W. Va. at 1, 680 S.E.2d at 17, Syl. Pt. 2. *See also* Syl. pt. 1, *Jones v. Patterson Contracting, Inc.*, 206 W. Va. 399, 524 S.E.2d 915 (1999) ("'"When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant." Syl. Pt. 3, *Roberts v. Gale*, 149 W. Va. 166, 139 S.E.2d 272 (1964).' Syl. Pt. 1, *Brannon v. Riffle*, 197 W. Va. 97, 475 S.E.2d 97 (1996)."). With these standards to guide us, we now consider the case before us.

13

### III.  Discussion

Although Fairmont Tool raises several assignments of error,[17] we focus our discussion on the question of whether the circuit court erred in denying the company's motion for post-trial relief on respondent's FMLA interference claim as it is dispositive of this appeal. Fairmont Tool argues that respondent failed to prove the elements of his FMLA interference claim, most notably that he suffered prejudice as a result of Fairmont Tool's technical violation of the statute.  Fairmont Tool contends that respondent failed to present any evidence of the harm he claims he suffered – that is, that he "would not have structured his leave in the same way" had the company provided him notice of his rights under the FMLA. *See* n.16, *supra.* Rather, Fairmont Tool argues, respondent's testimony concentrated inordinately on his failed claim that he was wrongfully discharged in retaliation for his intention to take FMLA leave, including that he could not afford to pay for care and treatment after he was laid off and further, that he suffered severe emotional distress because his chemotherapy treatment was delayed, which evidence was offered in support of his tort of outrage claim.[18] Fairmont Tool argues that because respondent failed to prove that he would have structured his leave differently if notice of his FMLA rights

---

[17] To the extent respondent also suggests that several of Fairmont Tool's post-trial motions were filed untimely, he fails to assert a cross-assignment of error on the issue.

[18] As noted above, although the jury returned a verdict in favor of respondent on his tort of outrage claim, the circuit court granted Fairmont Tool a new trial on that claim because the verdict "was based on findings regarding wrongful termination, a claim which was dismissed by the [c]ourt." Respondent later dismissed that claim voluntarily, with prejudice.

had been provided, its post-trial motion for judgment as a matter of law should have been granted.

In response, respondent states that the circuit court correctly concluded that it was within the province of the jury to determine whether he adequately demonstrated that he was prejudiced by Fairmont Tool's failure to notify him of his FMLA rights and that, when giving him the benefit of all favorable inferences that may reasonably be drawn from the facts, the jury's verdict must be upheld. Respondent does not cite to any evidence of record which he contends proves he suffered prejudice for purposes of an FMLA interference claim.

The FMLA provides eligible employees with certain rights and protections, including up to a total of twelve unpaid workweeks of leave during any twelve-month period due to, among other reasons, "a serious health condition" that renders the employee unable to perform his or her job. 29 U.S.C. § 2612(a)(1)(D).[19] The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the statute's] subchapter," 29 U.S.C. § 2615 (a)(1), and "[a]ny violations of the [FMLA or its regulations] constitute interfering with,

---

[19] FMLA leave may be taken continuously in one block of time or, with the agreement of the employer, intermittently. *See* 29 U.S.C. § 2612(b). If the employee is insured under a group health insurance plan, the FMLA requires the employer to maintain coverage "for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave." 29 U.S.C. § 2614(c)(1).

restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220 (b). Among other duties, an employer is required "to communicate with employees regarding their rights under the FMLA. In particular, the regulations require employers to provide employees with individualized notice of their FMLA rights and obligations." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 142 (3rd Cir. 2004), *holding modified by Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3rd Cir. 2009). *See also Villegas v. Albertsons, LLC*, 96 F.Supp.3d 624 (W.D.Tex. 2015); *Valdez v. E.M. T-Shirts Distrib., Inc.*, 878 F.Supp.2d 357 (D. P.R. 2012); *Capilli v. Whitesell Constr. Co.*, 2006 WL 1722354 (D.N.J. 2006). The purpose of the notification requirements

> "is to ensure that employers allow their employees to make informed decisions about leave. . . . The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the statutory benefit of taking necessary leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work."

*Conoshenti*, 364 F.3d at 144 (*quoting Nusbaum v. CB Richard Ellis, Inc.*, 171 F.Supp.2d 377, 385-86 (D.N.J. 2001)); *accord Vannoy*, 827 F.3d at 301. Here, respondent contends that Fairmont Tool interfered with, restrained, or denied him benefits by failing to notify him of his eligibility to take FMLA leave after he informed his supervisors and other company personnel of his illness and need for such leave.

To prevail on a claim that an employer unlawfully interfered with an employee's rights under the FMLA, the employee must prove that "(1) he was eligible for

16

the FMLA , (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave,  and (5) his employer denied him FMLA benefits to which he was entitled." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020) (citing 29 U.S.C. § 2615). Although FMLA interference claims do not require a showing of intent on the part of the employer, proof of an interference violation is not enough to establish injury; an employee must also show that he or she was prejudiced by the violation. *See Ragsdale*, 535 U.S. at 89, 91 (instructing that 29 U.S.C. § 2617 "provides no relief unless the employee has been prejudiced by the violation" and directing courts to ask "what steps the employee would have taken had the employer given the required notice). Thus, even if a reasonable jury finds that an employer interfered, restrained, or denied the exercise of FMLA rights, the employee must still prove that he was prejudiced by the violation in order to recover.[20] "The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion,

---

[20] *See Jones v. Children's Hosp.*, 58 F.Supp.3d 656, 668-69 (E.D. La. 2014) (citing *Ragsdale*, 535 U.S. at 82); *accord Vannoy*, 827 F.3d at 301 (stating that "if a notice violation occur[s], the 'FMLA's comprehensive remedial mechanism' grants no relief absent a showing that the violation prejudiced" the plaintiff (*quoting Ragsdale*, 535 U.S. at 89)); *Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007) ("[The] FMLA's remedial scheme . . . requires an employee to prove prejudice as a result of an employer's noncompliance"); *Mammen v. Thomas Jefferson Univ.*, 523 F.Supp.3d 702, 725 (E.D. Pa. 2021) ("The employee must also establish prejudice stemming from the employer's [FMLA] violation").

§ 2617(a)(1)(B).[21] The remedy is tailored to the harm suffered." *Ragsdale*, 535 U.S. at 89 (footnote added). *See also Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014) (determining that "in order to prove that she was 'prejudiced' by an FMLA violation, a plaintiff such as Evans need only demonstrate some harm remediable by either 'damages' or 'equitable relief'"). In sum, for purposes of a FMLA interference claim, "[p]rejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate." *Jones v. Children's Hosp.*, 58 F. Supp.3d 656, 669 (E.D. La. 2014) (footnote omitted).

---

[21] 29 U.S.C § 2617(a), regarding civil actions by employees, provides, in relevant part, as follows:

> **(1) Liability**
> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected--
> **(A)** for damages equal to--
> **(i)** the amount of--
> **(I)** any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
> **(II)** in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;
> . . . .
> and
> **(B)** for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

18

Accordingly, we hold that to prevail on a claim that an employer unlawfully interfered with an employee's rights under the FMLA, the employee must prove that (1) he or she was eligible for FMLA benefits, (2) the employer was covered by the FMLA, (3) the employee was entitled to leave under the FMLA, (4) he or she provided notice of the intention to take leave, and (5) the employer denied the employee FMLA benefits to which he or she was entitled. The employee must also prove that he or she was prejudiced by the employer's violation of the statute.

For purposes of this appeal, Fairmont Tool does not dispute that respondent was eligible for FMLA benefits, that Fairmont Tool was covered by the FMLA, and that respondent was entitled to FMLA leave. And, although Fairmont Tool argues that respondent failed to prove that he gave proper notice of his intention to take FMLA leave and that, in turn, also failed to prove that the company interfered with, restrained, or denied him the benefits to which he was entitled under the FMLA, the jury concluded otherwise. Respondent testified that, upon receiving his cancer diagnosis in April of 2015, he began asking for information about the FMLA from Fairmont Tool personnel, including his supervisor, Pat Stevens, and the office manager, Tammy Hendricks. Respondent testified that his efforts were unavailing as they told him (incorrectly) that Fairmont Tool did not offer FMLA leave. In contrast, Mr. Stevens and Ms. Hendricks testified that respondent never approached them about FMLA. In our review of the circuit court's order denying Fairmont Tool's post-trial motion for judgment under Rule 50(b), we must assume that the

19

jury resolved the conflicts in the evidence in favor of respondent, the prevailing party. *See Fredeking*, 224 W. Va. at 1, 680 S.E.2d at 17, Syl. Pt. 3. *See also* Syl. Pt. 11, *Jordan v. Jenkins*, 245 W. Va. 532, 859 S.E.2d 700 (2021) ("It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed." (Internal citations omitted)). Accordingly, we will not disturb the jury's finding that, based upon the evidence, Fairmont Tool violated 29 U.S.C. § 2615(a)(1) of the FMLA.

The primary focus of Fairmont Tool's appeal is whether respondent proved that he was prejudiced by the company's interference with his FMLA rights. Respondent claimed that "Fairmont Tool's failure to provide notice resulted in an impairment of [respondent's] rights and resulting prejudice, i.e., [respondent] would not have structured his leave in the same way had notice been provided."[22] Courts have instructed that this is a remediable harm where there has been a violation of 29 U.S.C. § 2615(a)(1): "Prejudice may be gleaned from evidence that had the [employee] received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently." *Vannoy*, 827 F.3d at 302.[23] *See also Hannah P. v. Coats*, 916 F.3d 327, 346 (4th Cir. 2019)

---

[22] *See* n.16, *supra.*

[23] By way of illustration, the United States Supreme Court in *Ragsdale* found the following scenario to be "reasonable":

Continued . . .

("Appellee's failure to provide notice of the availability of FMLA leave prejudiced Hannah because if she had been aware of the availability of FMLA leave, she could have structured her leave differently"); *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210 F.Supp.3d 744, 758 (W.D. Pa. 2016), *aff'd sub nom*, 704 F. Appx. 152 (3d Cir. 2017) (stating that employee could show prejudice by demonstrating that "'had she been properly informed [of her FMLA rights] . . . she could have structured her leave differently'" (internal citation omitted)); *Lupyan v. Corinithian Colleges, Inc.*, 761 F.3d 314, 319 (3d Cir. 2014) (employee's claim that because employer's failure to inform her "that her leave was under the FMLA. . . . she therefore was unaware of the requirement that she had to return to work in twelve weeks or be subject to termination" was sufficient to survive summary judgment).

---

Consider, for instance, the right under § 2612(b)(1) to take intermittent leave when medically necessary. An employee who undergoes cancer treatments every other week over the course of 12 weeks might want to work during the off weeks, earning a paycheck and saving six weeks for later. If she is not informed that her absence qualifies as FMLA – and if she does not know of her right under the statute to take intermittent leave – she might take all 12 of her FMLA-guaranteed weeks consecutively and have no leave remaining for some future emergency. In circumstances like these, Ragsdale argues, the employer's failure to give the notice required by the regulation could be said to "deny," "restrain," or "interfere with" the employee's exercise of her right to take intermittent leave.

535 U.S. at 89-90.

21

On appeal, respondent fails to cite to any evidence of record showing that he suffered prejudice as a result of Fairmont Tool's failure to notify him of his FMLA rights. Again, "prejudice exists where an employee [inter alia] loses compensation or benefits '*by reason of the violation*,' 29 U.S.C. § 2617(a)(1)(A)(i)(1)[.]" *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 924 (4th Cir. 2007). Respondent failed to present any evidence to the jury demonstrating that he lost compensation or benefits by reason of Fairmont Tool's technical violation of the FMLA. While the jury awarded respondent $3,520.00 in lost wages and $881.22 in lost benefits, he did not claim those losses resulted from Fairmont Tool's notice violation. Instead, he claimed those damages in connection with his *FMLA retaliation claim* that was dismissed following the presentation of respondent's case-in-chief. Finally, respondent presented no evidence as to how he would have structured his leave had Fairmont Tool advised him of his rights under the FMLA. Respondent's blanket assertion that he "would not have structured his leave in the same way had notice been provided," without more, was simply insufficient to prove the required element of harm at trial.[24]

_____

[24] *See Ragsdale*, 535 U.S. at 90 ("Ragsdale has not shown that she would have taken less leave or intermittent leave if she had received the required notice"); *Dorsey v. Jacobson Hollman, PLLC*, 476 F. App'x 861, 862 (D.C. Cir. 2012) (concluding plaintiff could not show prejudice where she "never returned to work" and "provides no record evidence whatsoever that she could have structured her leave differently" had she been properly informed about FMLA leave); *Caplan*, 210 F.Supp.3d at 758 (although plaintiff "makes the blanket assertion that if properly informed about her FMLA rights 'she would have structured her leave differently so that her job would have been protected,' she does not state how she would have structured her leave, or how that restructuring would have protected her job"); *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1377 (D.C. Cir. 2020) (concluding that because plaintiff "fail[ed] to identify evidence of prejudice arising 'by

Continued . . .

Therefore, we are compelled to find that the circuit court erred in denying Fairmont Tool's renewed Rule 50(b) motion for judgment as a matter of law.

## IV.    Conclusion

For the reasons stated above, we conclude that the circuit court erred in denying Fairmont Tool's Rule 50(b) motion for judgment as a matter of law, and order that the jury verdict in favor of respondent be reversed.

Reversed.

---

reason of the [FMLA] violation' or 'as a direct result of the violation,'" her claim necessarily fails); *McCormack v. Blue Ridge Behav. Healthcare*, 523 F.Supp.3d 841, 856 (W.D. Va. 2021) (holding that plaintiff failed to present "any evidence indicating that she lost compensation or suffered any other form of monetary loss as a result of the alleged interference with her FMLA rights"). *But see Hannah P.*, 916 F.3d at 347 ("[T]he record contains evidence that if Hannah had known that the FMLA protected her position, she would have used only sick leave for her leave of absence. . . . Instead, she used a combination of sick leave and annual time to take four weeks off. According to Hannah, '[u]nlike annual leave, sick leave is not paid out at the end of an employee's service, resulting in a loss of a benefit worth at least $20,000.'").